MICHAEL PITEAU *v.* BOARD OF EDUCATION OF
THE CITY OF HARTFORD ET AL.
(SC 18351)

Rogers, C. J., and Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued September 10, 2010—officially released April 19, 2011

*William R. Darcy*, with whom was *Barry S. Zitser*, for the appellant (plaintiff).

*Ann F. Bird*, for the appellee (named defendant).

*J. William Gagne, Jr.*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellees (defendant Local 566, Council 4, American Federation of State, County and Municipal Employees, AFL-CIO, et al.).

*Karen K. Buffkin* filed a brief for the state board of labor relations as amicus curiae.

*Opinion*

PALMER, J. The plaintiff, Michael Piteau, brought this action against the defendants, the board of education of the city of Hartford (board of education), Local 566,

Council 4, American Federation of State, County and Municipal Employees, AFL-CIO (Local 566), and Council 4, American Federation of State, County and Municipal Employees, AFL-CIO (Council 4), alleging that Local 566 and Council 4[1] had breached their duty of fair representation and that the board of education had breached its collective bargaining agreement with the unions. The trial court dismissed the action for lack of subject matter jurisdiction after concluding that the plaintiff had failed to exhaust his administrative remedies with the state board of labor relations (board of labor relations) in accordance with General Statutes §§ 7-468 (d),[2] 7-470 (b)[3] and 7-471 (5)[4] of the Municipal Employees Relations Act (act), General Statutes § 7-460 et seq. On appeal,[5] the plaintiff claims that the trial court improperly interpreted the act as divesting the Superior Court of concurrent jurisdiction over claims alleging a breach of the duty of fair representation. We disagree and, accordingly, affirm the judgment of the trial court.

[1] We hereinafter refer to Local 566 and Council 4 collectively as the unions.

[2] General Statutes § 7-468 (d) provides: "When an employee organization has been designated in accordance with the provisions of sections 7-467 to 7-477, inclusive, as the exclusive representative of employees in an appropriate unit, it shall have a duty of fair representation to the members of that unit."

[3] General Statutes § 7-470 (b) provides in relevant part: "Employee organizations or their agents are prohibited from . . . (3) breaching their duty of fair representation pursuant to section 7-468 . . . ."

[4] General Statutes § 7-471 (5) provides in relevant part: "Whenever a question arises as to whether a practice prohibited by sections 7-467 to 7-477, inclusive, has been committed by a municipal employer or employee organization, the board [of labor relations] shall consider that question in accordance with the following procedure . . . (D) For the purposes of hearings and enforcement of orders under sections 7-467 to 7-477, inclusive, the board shall have the same power and authority as it has in sections 31-107, 31-108 and 31-109, and the municipal employer and the employee organization shall have the right of appeal as provided therein. . . ."

[5] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The record reveals the following relevant factual allegations[6] and procedural history. The plaintiff was employed by the board of education as a mechanical journeyman from 1996 until 2006. His primary responsibility was to maintain the mechanical systems at Hartford Public High School. In 2005, the board of education hired private contractors to demolish portions of the school building, including the mechanical systems, in connection with a renovation of the school. The demolition yielded valuable scrap metal, which the contractors placed in piles around the construction site. Over the course of the renovation, with the permission of the contractors, the plaintiff, together with his supervisor, Joseph Baker, and a coworker, Vincent Chesky, gathered the discarded metal, cut it into smaller pieces, and sold it to local scrap dealers. In July, 2006, following a complaint about their activities, the board of education placed the three men on paid leave pending the outcome of an investigation. When an investigator acting on behalf of the board of education first questioned Chesky, he denied any involvement in the salvaging operation and signed a statement to that effect. Subsequently, Baker resigned, and the board of education brought disciplinary proceedings against the plaintiff and Chesky.

At all times relevant to this appeal, the plaintiff and Chesky were members of Local 566. Pursuant to a collective bargaining agreement between that union and the board of education, Local 566 was the exclusive bargaining agent for employees in the job position that the plaintiff and Chesky occupied. The president of Local 566, Mark Blumenthal, represented both men at

[6] "When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it . . . must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *State* v. *Marsh & McLennan Cos.*, 286 Conn. 454, 464, 944 A.2d 315 (2008).

their respective predisciplinary conferences. At those meetings, the plaintiff and Chesky gave different accounts of their salvaging activities, and Chesky changed his original account altogether. Although both admitted that they had taken metal from the construction site for recycling, the plaintiff stated that they had done so during nonworking hours, whereas Chesky stated that they had done so during working hours. Chesky also stated that, in contrast to the plaintiff, he did not receive payment for the metal.

On September 13, 2006, the board of education terminated the plaintiff's employment. On September 20, 2006, Blumenthal filed a grievance with the board of education on the plaintiff's behalf. On September 22, 2006, the labor relations manager for the board of labor relations, Jill Cutler-Hodgman, drafted a statement for Chesky to sign that was highly prejudicial to the plaintiff. In that statement, which was witnessed and signed by Blumenthal, Chesky stated that, over the course of one year, he regularly had witnessed the plaintiff and Baker salvaging scrap metal from the construction site at Hartford Public High School and preparing the metal for resale during the work day. Chesky further stated that, although he knew that the plaintiff and Baker were wrong to have engaged in such activity, he occasionally had helped them collect the scrap metal. The plaintiff initially was not informed about this statement, which Chesky had provided to the board of education.

Thereafter, Cutler-Hodgman prepared a "last chance agreement" between Chesky and the board of education that provided in relevant part: "All [p]arties recognize and agree that Chesky has engaged in inappropriate and unprofessional conduct. Specifically, Chesky used extraordinarily bad judgment based on his involvement with preparing materials, including copper and brass pipes, for resale. Chesky's decision to assist other employees both during work time and on his own time

preparing materials, including copper and pipes, for resale, was completely irresponsible and intolerable." The last chance agreement also provided that "[a]ll [p]arties recognize and agree that the [aforementioned] conduct . . . is completely unacceptable and inappropriate," that "[a]ll [p]arties further agree that the [b]oard [of education] has just cause to terminate Chesky's employment," and that, "[i]n order to provide Chesky one final opportunity to conduct himself in an appropriate manner as an employee of the [b]oard [of education], the [b]oard [of education] agrees to allow him one last chance for employment." Under the agreement, Chesky was required to testify truthfully regarding the plaintiff's participation in the salvaging activities. Once again, Blumenthal did not advise the plaintiff of Chesky's last chance agreement, which Chesky, Blumenthal and Cutler-Hodgman, on behalf of the board of education, signed on October 5, 2006.

On October 4, 2006, Blumenthal represented the plaintiff in a grievance proceeding against the board of education. On October 24, 2006, the board of education denied the plaintiff's grievance, and the unions filed a timely demand for arbitration as provided under the parties' collective bargaining agreement. Patrick Sampson, assisted by Blumenthal, represented the unions at the arbitration proceeding before the state board of mediation and arbitration. At the commencement of that proceeding, which was neither recorded nor transcribed, Sampson moved to sequester all witnesses, including the plaintiff. Sampson's motion was granted. Consequently, the plaintiff was precluded from hearing Chesky's testimony or learning about Chesky's last chance agreement with the board of education.

Following the arbitration proceeding, the parties filed posthearing briefs. In its brief, the board of education relied heavily on Chesky's last chance agreement, arguing repeatedly that the agreement constituted an

admission by the unions that the board of education had just cause to terminate the plaintiff. On September 10, 2007, the arbitration panel rendered a unanimous decision in favor of the board of education. In its decision, the panel also relied on the last chance agreement, stating in relevant part: "Testimony from Chesky reveals that the [plaintiff] and Baker conducted the salvaging operation during working hours. Chesky was then given a [l]ast [c]hance [a]greement . . . [that] stated that his role in the operation was completely unacceptable and inappropriate . . . and the [b]oard [of education] ha[d] just cause to terminate his employment. . . .

\* \* \*

"The [b]oard of [e]ducation believes it ha[s] proved ample just cause for termination. The [plaintiff] committed multiple acts of serious misconduct which warrants termination. The [u]nion has acknowledged the misconduct as warranting termination in . . . Chesky's [l]ast [c]hance [a]greement. The [plaintiff] shall not be afforded progressive discipline because his acts consisted of serious misconduct."

According to the plaintiff, he learned of Chesky's last chance agreement for the first time upon reading the arbitration panel's decision. The plaintiff also alleged that, if he had known about the agreement during the grievance and arbitration proceedings, he would have obtained private counsel to represent him in those proceedings, and he would have challenged the statements contained in the agreement, including the statement that "[a]ll parties . . . agree" that the board of education had just cause to terminate Chesky for his salvaging activities.

Following the arbitration panel's decision, the plaintiff filed an unfair labor practice complaint with the board of labor relations, alleging, inter alia, that the

unions had violated their duty of fair representation[7] under § 7-470 (b) (3)[8] by negotiating a settlement agreement on behalf of Chesky that was highly prejudicial to the plaintiff without disclosing that fact to him. The plaintiff also alleged that the unions had processed his grievance in an entirely perfunctory and inadequate manner. The plaintiff, however, withdrew his complaint before the board of labor relations could act on it.

Thereafter, the plaintiff filed the present action against the unions and the board of education, claiming that the unions had breached their statutory duty of fair representation in their handling of his predisciplinary, grievance and arbitration proceedings with the board of education and that, as a consequence, the board of education had breached its collective bargaining agreement with the unions by terminating him from his employment without just cause.[9] In his prayer for relief,

---

[7] "A union must represent its members in good faith. This duty of fair representation derives from the union's status as the sole bargaining representative for its members. As such, the union has the exclusive right and obligation to act for its members and to represent their interests." *Labbe* v. *Pension Commission*, 239 Conn. 168, 193, 682 A.2d 490 (1996). "The duty of fair representation requires the union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion in complete good faith and honesty, and to avoid arbitrary conduct. . . . A union breaches this duty if it acts arbitrarily, discriminatorily or in bad faith." (Citations omitted; internal quotation marks omitted.) Id., 194. Thus, "a union may not, without a legitimate purpose, take action favoring some of its members at the expense of others." *Teamsters Local Union No. 42* v. *National Labor Relations Board*, 825 F.2d 608, 611 (1st Cir. 1987).

[8] See footnote 3 of this opinion.

[9] In his complaint, the plaintiff alleged, inter alia, that the unions had breached their duty of fair representation by failing (1) to investigate the truthfulness of the statements contained in Chesky's last chance agreement, including his statement that he did not receive compensation for his metal salvaging work, prior to agreeing in writing that Chesky's statements were truthful, (2) "to investigate, research and seek legal counsel" before signing the last chance agreement so as to determine whether there was " 'just cause' " for terminating Chesky on the basis of the statements contained in the last chance agreement and so as to determine the impact that those statements would have on the plaintiff's pending grievance against the board of education, (3) to advise the plaintiff of the existence of Chesky's last

the plaintiff sought reinstatement to his former position with full restoration of seniority and benefits, back pay, attorney's fees and costs.[10]

The defendants filed a motion to dismiss the action on the ground that the plaintiff had failed to exhaust his administrative remedies with the board of labor relations as required under the act.[11] In their brief in

chance agreement and the statements contained therein that were highly detrimental to the plaintiff's grievance, thus depriving the plaintiff of the opportunity to challenge those statements, (4) to advise the plaintiff of the unions' conflict of interest and the plaintiff's right to have outside counsel handle his grievance, and (5) to represent adequately the plaintiff due to the conflict of interest occasioned by the unions' acknowledgment in the last chance agreement that Chesky's statements were true and constituted just cause for Chesky's termination and, therefore, for the plaintiff's termination. The plaintiff further alleged that, as a result of the foregoing misconduct, the unions' representation of him was discriminatory and grossly inadequate, resulting in the unions' failure (1) to request that the board of education turn over Chesky's personnel file for the purpose of demonstrating, by other evidence or testimony, that Chesky's work performance and disciplinary record were inferior to the plaintiff's, (2) to argue that the board of education lacked just cause to terminate the plaintiff in light of his work and disciplinary record, which was much better than Chesky's, (3) to subpoena evidence from the board of education concerning other employees who had engaged in similar conduct but received less serious sanctions, (4) to object to the admission of Chesky's last chance agreement and other prejudicial documentary evidence at the arbitration hearing, and (5) to appeal the arbitration panel's decision to uphold the plaintiff's termination by filing a motion to vacate.

[10] Prior to bringing this action, the plaintiff had filed an application to vacate the arbitration award, that is, the arbitration panel's decision to uphold his termination. Thereafter, the trial court, *Graham, J.*, granted the plaintiff's motion to consolidate that application with the present action. On November 20, 2008, the trial court, *Aurigemma, J.*, granted the motion of the board of education to dismiss the application to vacate, presumably on the ground that the board of education raised in that motion, namely, that the plaintiff lacked standing to seek to vacate the arbitration award because he was not a party to the arbitration. That ruling is not the subject of this appeal.

[11] We note that the board of education also moved to dismiss the plaintiff's claim that the unions and the board of education had breached the terms of the collective bargaining agreement on the additional ground that the plaintiff was not entitled to enforce the terms of that agreement between the unions and the board of education because he was not a party to it.

support of their motion to dismiss for failure to exhaust administrative remedies, the unions maintained that the legislative history surrounding § 7-468 (d) demonstrates that that provision was enacted to require that claims of breach of the duty of fair representation shall first be brought to the board of labor relations and that the Superior Court has jurisdiction over such claims only upon appeal from a final decision of the board.

The plaintiff contended that the exhaustion doctrine does not apply to hybrid actions, in which an employee, like the plaintiff in the present action, brings an action against both his employer *and* union alleging that the employer had breached the terms of the collective bargaining agreement *and* that the union had breached its duty of fair representation in its handling of the employee's grievance against the employer for the employer's breach of the collective bargaining agreement.[12] The plaintiff maintained that this exception to

The trial court did not address this ground for dismissal, and the board of education has not challenged the trial court's failure to address the claim on appeal. Accordingly, we deem the claim to have been waived.

[12] In *Vaca* v. *Sipes*, 386 U.S. 171, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967), the United States Supreme Court explained the hybrid action exception to the exhaustion doctrine as follows: "[An] employee may seek judicial enforcement of his contractual rights [under a collective bargaining agreement when] . . . the union has sole power under the [agreement] to invoke the higher stages of the grievance procedure . . . and . . . the [employee] has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. It is true that the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement. But the employer has committed a wrongful discharge in breach of that agreement, a breach which could be remedied through the grievance process to the [employee's] benefit were it not for the union's breach of its statutory duty of fair representation to the employee. To leave the employee remediless in such circumstances would . . . be a great injustice. We cannot believe that Congress, in conferring [on] employers and unions the power to establish exclusive grievance procedures, intended to confer [on] unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do we think that Congress intended to shield employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the

the exhaustion requirement is necessary to protect the rights of employees who have been harmed by the joint misconduct of their employers and unions, and that, in the absence of express language in § 7-468 (d) divesting the courts of concurrent jurisdiction over such actions, this court should not impute such an intent to the legislature.

The trial court granted the defendants' motion to dismiss, concluding, contrary to the assertions of the plaintiff, that the legislative history of § 7-468 (d) makes clear that subsection (d) was added to § 7-468 for the purpose of overruling the holding in *Spadola* v. *Board of Education*, Superior Court, judicial district of New Haven, Docket No. CV6-10642 (October 16, 1992) (7 Conn. L. Rptr. 473), that a municipal employee bringing a hybrid action is *not* required to exhaust contractual remedies under a collective bargaining agreement prior to commencing such an action in Superior Court. The trial court also concluded that the futility exception to the exhaustion doctrine is not applicable to the present case because the board of labor relations was perfectly capable of fashioning an adequate remedy, including reinstatement with back pay, if it had determined that

enforcement of such agreements." Id., 185–86. Thus, "[s]uch [an action], as a formal matter, comprises two causes of action. The [action] against the employer rests on . . . a breach of the collective-bargaining agreement. The [action] against the union is one for breach of the union's duty of fair representation . . . . Yet the two claims are inextricably interdependent. To prevail against either the company or the [u]nion . . . [employees] must [show] not only . . . that their discharge was contrary to the [agreement] but must also carry the burden of demonstrating breach of [the] duty [of fair representation] by the [u]nion. . . . The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The [action] is thus not a straightforward breach-of-contract [action] . . . but a hybrid [breach of contract]/fair representation claim, amounting to a direct challenge to the private settlement of disputes under [the collective-bargaining agreement]." (Citations omitted; internal quotation marks omitted.) *DelCostello* v. *International Brotherhood of Teamsters*, 462 U.S. 151, 164–65, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983).

the plaintiff's claims were meritorious. This appeal followed. On appeal, the plaintiff renews the claims that he raised in the trial court.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield,* 263 Conn. 558, 563–64, 821 A.2d 725 (2003). Under that doctrine, "a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed."[13] (Internal quotation marks omitted.) *Garcia* v. *Hartford,* 292 Conn. 334, 339, 972 A.2d 706 (2009). Thus, "[w]e have frequently held that [when] a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield,* supra, 563. When, however, "a statutory requirement of exhaustion is not explicit, courts are guided by [legislative] intent in determining whether

---

[13] As this court has explained, "[a] primary purpose of the [exhaustion] doctrine is to foster an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. . . . Moreover, the exhaustion doctrine recognizes the notion, grounded in deference to [the legislature's] delegation of authority to coordinate branches of [g]overnment, that agencies, not the courts, [should] have primary responsibility for the programs that [the legislature] has charged them to administer. . . . Therefore, exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities." (Citations omitted; internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield,* supra, 263 Conn. 564–65.

application of the doctrine would be consistent with the statutory scheme. . . . Consequently, [t]he requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief." (Citations omitted; internal quotation marks omitted.) Id., 564.

The provisions of the act govern our resolution of the issue presented. General Statutes § 7-471 (5) provides in relevant part: "Whenever a question arises as to whether a practice prohibited by sections 7-467 to 7-477, inclusive, has been committed by a municipal employer or employee organization, the board [of labor relations] shall consider that question in accordance with the following procedure . . . (D) For the purposes of hearings and enforcement of orders under sections 7-467 to 7-477, inclusive, the board [of labor relations] shall have the same power and authority as it has in sections 31-107, 31-108 and 31-109 . . . ." Thus, the board of labor relations is charged, in the first instance, "with determining whether an unfair practice, as defined by statute, has been committed and [if so] with remedying any violations." *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 284, 788 A.2d 60 (2002). In the present case, the plaintiff alleges a breach of the duty of fair representation in violation of § 7-468 (d),[14] which, under § 7-470 (b),[15] constitutes an unfair or prohibited practice. General Statutes § 7-471 (5) further provides that the municipal employer and employee shall have the right to appeal from an adverse decision of the board of labor relations to the Superior Court in accordance with General Statutes § 31-109.[16]

[14] See footnote 2 of this opinion.
[15] See footnote 3 of this opinion.
[16] General Statutes § 31-109 provides in relevant part: "(d) Any person aggrieved by a final order of the board [of labor relations] granting or denying in whole or in part the relief sought may appeal pursuant to the provisions of chapter 54 to the superior court for the judicial district where the unfair labor practice was alleged to have occurred, in the judicial district of Hartford, or in the judicial district wherein such person resides or transacts business. . . ."

The language of § 7-471 (5) directing that the board of labor relations "shall" consider claims alleging a prohibited practice "[w]henever" such claims are raised may be construed as suggesting that those claims must be brought to the board in the first instance. This interpretation is supported by virtue of the fact that § 7-741 (5) also provides that an employer or employee aggrieved by a final order of the board of labor relations may appeal from that order to the Superior Court. Because, however, the provision contains no express exhaustion requirement, we turn to the pertinent legislative history to ascertain the intent of the legislature with respect to the respective jurisdiction of the board of labor relations and the Superior Court over claims of a breach of the duty of fair representation.[17] A review of that legislative history and genealogy definitively establishes that the legislature did, indeed, intend for such claims to be brought in the first instance to the board of labor relations.

In 1993, the legislature passed Public Acts 1993, No. 93-426, § 4 (P.A. 93-426). Prior to that legislation, the duty of fair representation, although recognized at common law, had not been statutorily mandated, and the Superior Court and the board of labor relations were deemed to have concurrent jurisdiction over claims of breach of that duty. See, e.g., *Fetterman* v. *University of Connecticut*, 192 Conn. 539, 557, 473 A.2d 1176 (1984). As the trial court explained, however, P.A. 93-426 both codified the duty of fair representation and

---

[17] "When interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 631, 6 A.3d 60 (2010). In accordance with General Statutes § 1-2z, we look first to the language of the statute to determine that intent. When, as in the present case, the statutory language is not plain and unambiguous, we then consider extratextual evidence of the statutory meaning, including the relevant legislative history. Id., 631–32.

vested the board of labor relations with exclusive jurisdiction over claims of a breach of that duty, even when such claims are brought in the context of a hybrid action, subject to a right of appeal to the Superior Court from an adverse final decision of that board.[18] With respect to the codification of the duty of fair representation, the legislature achieved that objective in P.A. 93-426 by expressly creating such a duty in subsection (d) of § 7-468, and by amending § 7-470 (b) to make it a prohibited practice for a municipal employee organization or its agent to breach the duty.

With respect to the jurisdictional issue, during legislative debate in the House of Representatives on P.A. 93-

[18] We note that a number of trial judges have characterized the role of the board of labor relations with respect to deciding claims under the act as implicating the doctrine of primary jurisdiction. See, e.g., *Bryk* v. *Brown*, Superior Court, judicial district of Litchfield, Docket No. CV-07-5002382S (August 5, 2008) (46 Conn. L. Rptr. 133). Although it may seem appropriate to characterize the role of the board of labor relations as primary in view of our determination that an employee first must present his or her claim to the board, the doctrine of primary jurisdiction traditionally has been held to apply when "a claim is originally cognizable in the courts . . . and . . . enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed with the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." (Internal quotation marks omitted.) *Mazzola* v. *Southern New England Telephone Co.*, 169 Conn. 344, 349, 363 A.2d 170 (1975); see also *Golden Hill Paugussett Tribe of Indians* v. *Weicker*, 39 F.3d 51, 58–59 (2d Cir. 1994) ("[p]rimary jurisdiction applies [when] a claim is originally cognizable in the courts . . . but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body"); *Waterbury* v. *Washington*, 260 Conn. 506, 546, 800 A.2d 1102 (2002) ("under the . . . doctrine of primary jurisdiction . . . the court has discretion, and in certain cases should refer the case, or certain aspects of it, to the administrative agency, yet retain jurisdiction for further action, if appropriate"). Because the board of labor relations has exclusive original jurisdiction over claims under the act, and in the interest of avoiding any confusion between the doctrine historically referred to as primary jurisdiction and the doctrine implicated in the present case, we characterize the jurisdiction of the board of labor relations as exclusive rather than primary.

426, Representative Michael P. Lawlor explained that the legislation was intended to overrule the holding of *Spadola* v. *Board of Education,* supra, 7 Conn. L. Rptr. 473, a then recent Superior Court case holding that a municipal employee was not required to exhaust his contractual remedies before bringing a hybrid action in the Superior Court. See 36 H.R. Proc., Pt. 36, 1993 Sess., pp. 12,899–12,902. Consistent with this intent, when Representative Robert Farr asked Representative Lawlor to clarify whether, under the proposed legislation, a municipal employee who claims that a union had breached its duty of fair representation "would have to exhaust administrative remedies" before filing an action in court; id., p. 12,900; Representative Lawlor responded, "that is correct." Id.; see also id., p. 12,902, remarks of Representative Robert M. Ward (observing that new law would require municipal employees to file claims of breach of duty of fair representation with board of labor relations). When Representative Ward asked Representative Lawlor whether, prior to *Spadola,* this type of municipal employee action had been brought to the board of labor relations or to the Superior Court, Representative Lawlor responded, "[a]t the option of the complain[ant], either." Id., pp. 12,903–12,904. Representative Ward then asked, "[a]nd with this [new] law, the disgruntled employee, if you will or union member, would not have the option? Is that correct?" Id., p. 12,904. Representative Lawlor thereafter responded: "[He or she] [w]ould not have the option at the first level, but would first be required to go to the [s]tate [b]oard [of labor relations] and then if not satisfied there, could appeal . . . to the Superior Court." Id. Representative Ward queried whether the legislation would have any impact on private sector employees who, under federal labor law, were permitted to bring such actions in federal court. Id., p. 12,905. Specifically, Representative Ward stated: "I am trying

to see if we are making private sector employees who are unhappy, follow a different process than public sector employees who are unhappy with their representation." Id. Representative Lawlor responded that private sector employees, in contrast to municipal employees, "can go directly to court." Id., p. 12,906.

The foregoing legislative history leaves no room for doubt concerning the intent of the legislature. An employee alleging a breach of the duty of fair representation under § 7-468 (d) initially must seek relief before the board of labor relations, and jurisdiction lies in the Superior Court only for purposes of an appeal from an adverse final order of the board of labor relations.[19] Consequently, the trial court properly dismissed the present action for lack of subject matter jurisdiction in light of the plaintiff's failure to pursue his administrative remedies.[20]

---

[19] The plaintiff relies on appellate cases from this court and other jurisdictions for the proposition that the hybrid action exception to the exhaustion doctrine survived the enactment of P.A. 93-426. These cases do not support the plaintiff's claim because, with one exception, namely, Labbe v. Pension Commission, 239 Conn. 168, 682 A.2d 490 (1996), they all were decided before the enactment of P.A. 93-426, which clearly overruled the holding of those cases that held that the Superior Court had concurrent jurisdiction over such actions. With respect to Labbe, we had no occasion in that case to address the issue of whether the legislature's then recent amendments to the act, and, in particular, its codification of the duty of fair representation, had divested the courts of concurrent jurisdiction over claims of a breach of that duty. Consequently, Labbe also provides no support for the plaintiff's contention.

[20] We note that a number of Superior Court decisions have reviewed the legislative history of P.A. 93-426 and reached the same conclusion that we reach in the present case concerning the exhaustion requirement for hybrid claims under the act. See Tinney v. New Haven Firefighters, Local 825, Superior Court, judicial district of New Haven, Docket No. CV-07-40299029S (October 17, 2008) (Cosgrove, J.); Huckaby v. Local 884, Superior Court, judicial district of New Haven, Docket No. CV-07-4027051S (March 4, 2008) (Robinson, J.); Busto v. AFSCME, Council 15, Local 1237, AFL-CIO, Superior Court, judicial district of New Haven, Docket No. CV-03-0481415S (April 15, 2004) (Devlin, J.); Long Ridge Paid Drivers Assn. v. Romaniello, judicial district of Waterbury, Complex Litigation Docket, Docket No. X02-CV-97-0163992S (August 6, 2002) (Sheldon, J.) (32 Conn. L. Rptr. 675).

The plaintiff nevertheless contends that he was not required to present his claim to the board of labor relations prior to commencing this action because the board of labor relations is not authorized to grant him the relief that he seeks, and, therefore, presenting his claim to that board would have been futile. Specifically, the plaintiff asserts that the board of labor relations does not have the authority "to provide a full and adequate remedy" because it "cannot . . . overturn the arbitration award, require the . . . board [of education] to reinstate the plaintiff to his job, or provide monetary damages against the . . . unions to make him whole for his loss of wages." We disagree.

"The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to [certain] exceptions. . . . [W]e have recognized such exceptions [however] only infrequently and only for narrowly defined purposes . . . such as when recourse to the administrative remedy would be futile or inadequate." (Citations omitted; internal quotation marks omitted.) *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 1, 13, 756 A.2d 262 (2000), overruled in part on other grounds by *Waterbury* v. *Washington*, 260 Conn. 506, 800 A.2d 1102 (2002). "It is well established that [a]n administrative remedy is futile or inadequate if the agency is without authority to grant the requested relief. . . . It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." (Citation omitted; internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 259, 851 A.2d 1165 (2004). Thus, "[i]f the available administrative procedure . . . provide[s] the [plaintiff] with a mechanism for attaining the remedy that [he] seek[s] . . . [the plaintiff] must exhaust that remedy." (Citation omitted; internal quotation marks omitted.) *Cannata* v. *Dept. of Environmental Protection*, 215

Conn. 616, 629–30 n.9, 577 A.2d 1017 (1990). It is well established, moreover, that "[t]he plaintiff's preference for a particular remedy does not determine the adequacy of that remedy. [A]n administrative remedy, in order to be adequate, need not comport with the [plaintiff's] opinion of what a perfect remedy would be." (Internal quotation marks omitted.) *BRT General Corp.* v. *Water Pollution Control Authority*, 265 Conn. 114, 123–24, 826 A.2d 1109 (2003).

In the present case, the plaintiff seeks reinstatement to his former position with restoration of seniority and benefits, back pay, attorney's fees and costs. An examination of the text of § 7-471 (5) and the case law interpreting it, including decisions of the board of labor relations,[21] makes it abundantly clear that the board is authorized to award the type of relief that the plaintiff seeks. See General Statutes § 7-471 (5) (B) ("[i]f, [after a hearing and] upon all the testimony, the board [of labor relations] determines that a prohibited practice has been or is being committed, it shall state its findings of fact and shall issue and cause to be served on the party committing the prohibited practice an order requiring it or him to cease and desist from such prohibited practice, and shall take such further affirmative action as will effectuate the policies of sections 7-467 to 7-477, inclusive, *including but not limited to . . . (ii) reinstatement of an employee discriminated against in violation of said sections with or without back pay*" [emphasis added]); see also *Council 4, AFSCME, AFL-CIO* v. *State Board of Labor Relations*, 111 Conn. App. 666, 676, 961 A.2d 451 (2008) ("[T]he imposition of attorney's fees and costs is consistent with . . . § 7-471 [5], which requires the [board of labor relations] to 'take such further affirmative action as will

[21] We note that an agency's time-tested and reasonable interpretation of a statute over which it has cognizance is entitled to judicial deference. See, e.g., *Vincent* v. *New Haven*, 285 Conn. 778, 784 n.8, 941 A.2d 932 (2008).

effectuate the policies of [collective bargaining] under the [act]' upon finding that a prohibited practice has been committed. The award to a prevailing party of costs and expenses is well within the discretion of the [board of labor relations], [as] long as the [opposing party] had the opportunity to examine and to challenge the reasonableness of the attorney's fees and costs incurred."), cert. denied, 291 Conn. 901, 967 A.2d 112 (2009); *In re Greenwich,* Conn. Board of Labor Relations, Decision No. 4348 (October 30, 2008) p. 9 (ordering back pay, costs and attorney's fees); *In re Old Saybrook,* Conn. Board of Labor Relations, Decision No. 4089 (September 30, 2005) p. 27 (ordering reinstatement of municipal employees "to their former positions at the same salary and benefit level that they would have been at but for their unlawful termination"); *In re Southington,* Conn. Board of Labor Relations, Decision No. 3685-A (August 10, 2000) p. 5 (ordering reinstatement of employee despite prior arbitration award upholding his termination); *In re East Hartford,* Conn. Board of Labor Relations, Decision No. 3571 (January 30, 1998) p. 5 (ordering back pay and medical costs); *In re Newington,* Conn. Board of Labor Relations, Decision No. 2957 (November 1, 1991) p. 10 (awarding costs and attorney's fees).

We also find no merit in the plaintiff's contention that the arbitration award upholding his termination would preclude the board of labor relations from providing an adequate remedy in this case, namely, reinstatement to his former position with back pay, because the board is not authorized to vacate arbitration awards. It is well established that the board of labor relations "is not deprived by an earlier ruling in [an arbitration] procedure of its duty to enforce compliance with [the act] by utilizing a remedy returning matters to the status quo ante." *Hartford* v. *Hartford Municipal Employees' Assn.,* 71 Conn. App. 467, 475, 802 A.2d 883 (2002); see

also *L. Suzio Construction Co.* v. *State Board of Labor Relations*, 148 Conn. 135, 144–45, 168 A.2d 553 (1961) (rejecting claim that prior action of state board of mediation and arbitration barred board of labor relations from considering and remedying charges of unfair labor practices); cf. *Local 1219, International Assn. of Fire Fighters* v. *Connecticut Labor Relations Board*, 171 Conn. 342, 354–55, 370 A.2d 952 (1976) (board of labor relations had authority to determine whether certain labor practices were in violation of act despite existence of award by state board of mediation and arbitration). This is so because, as we explained in *Hartford* v. *Hartford Municipal Employees Assn.*, supra, 259 Conn. 251, "the state board of mediation and arbitration and the state board of labor relations each [has] its 'own field of operation' "; id., 283; and "[e]ach addresses a separate wrong." *Hartford* v. *Hartford Municipal Employees' Assn.*, supra, 71 Conn. App. 475. In the present case, the arbitration panel's decision was based on a determination of whether the board of education violated the terms of the collective bargaining agreement by terminating the plaintiff. The arbitration panel's decision "did not involve [a] determination [of] whether the [termination] of the plaintiff constituted [an] unfair labor [practice] within the meaning of [the act]." *L. Suzio Construction Co.* v. *State Board of Labor Relations*, supra, 145. Accordingly, if the board of labor relations determines that the plaintiff's termination constituted or was the product of an unfair labor practice, the arbitration panel's decision to uphold the termination would not prevent the board of labor relations from ordering all appropriate relief to remedy the violation, including the plaintiff's reinstatement to his former position with back pay.[22] See, e.g., *In re Southington*, Conn. Board

[22] We note, however, that "the board [of labor relations] generally defers to an arbitral award when: (1) the unfair practice had been presented to and considered by the arbitral tribunal; (2) the arbitral proceedings were fair and regular; (3) all parties had agreed to be bound by the arbitral award; and (4) the award is not repugnant to the purposes and policies of the labor

of Labor Relations, Decision No. 3685-A, supra, p. 5 (ordering reinstatement of employee notwithstanding finding of arbitration panel that employee was terminated for just cause). Indeed, the board of education does not challenge the authority of the board of labor relations to order such relief in the present case.

Finally, we are not persuaded by the plaintiff's contention that the board of labor relations does not have jurisdiction over a hybrid action because it does not have jurisdiction over a breach of contract claim. In support of this contention, the plaintiff cites several decisions of the board of labor relations in which that board, in recognition of the fact that the state board of mediation and arbitration is charged with interpreting collective bargaining agreements and resolving disputes arising thereunder; see General Statutes § 7-472 (a);[23] declined to exercise jurisdiction over a *stand-alone* breach of contract claim. See *In re A.C.E.S. Education Assn.*, Conn. Board of Labor Relations, Decision No. 3329 (August 2, 1995) p. 13 n.4 ("[w]e have no jurisdiction over simple contract breaches"); *In re Windsor Locks Police Dept.*, Conn. Board of Labor Relations, Decision No. 2836 (August, 1990) p. 15 (recognizing that board of labor relations is not proper forum for adjudication of mere breach of contract claim "since such a question arises under the existing collective bar-

relations statutes." *Hartford* v. *Hartford Municipal Employees Assn.*, supra, 259 Conn. 286. In the present case, however, the board of labor relations would have no reason to defer to the arbitration panel's decision because the plaintiff's unfair labor practice claim was not presented to the arbitral panel.

[23] General Statutes § 7-472 (a) provides in relevant part: "The services of the State Board of Mediation and Arbitration shall be available to municipal employers and employee organizations for purposes of mediation of grievances or impasses in contract or contract reopener negotiations and for purposes of arbitration of disputes over the interpretation or application of the terms of a written agreement and, if such service is requested by both the municipal employer and the employee organization except as provided in section 7-473c for purposes of arbitration of impasses in contract or contract reopener negotiations. . . ."

gaining agreement and must be resolved by arbitration"); *In re Board of Education,* Conn. Board of Labor Relations, Decision No. 1717 (February 8, 1979) p. 4 ("[the] [b]oard [of labor relations] has no occasion to construe a collective bargaining agreement if the only question is whether the contract was breached"); *In re Board of Education,* Conn. Board of Labor Relations, Decision No. 1644 (May 9, 1978) p. 5 (stating that board of labor relations "would not have jurisdiction to decide [a breach of contract claim] if it stood alone"). Although these decisions make clear that the board of labor relations is not the proper body to resolve contract disputes that do not also involve an allegation of a prohibited labor practice, the plaintiff has provided no authority, and we are aware of none, to support his claim that the board of labor relations may not exercise jurisdiction over a breach of contract claim when it is interdependent with a claim over which the board of labor relations does have jurisdiction. Indeed, we can perceive of no persuasive reason, and the plaintiff has offered none, why the board of labor relations would or should decline to exercise jurisdiction when the two claims are so inextricably linked that the plaintiff can prevail on one only by prevailing on the other.[24] See footnote 12 of this opinion; see also *Felice* v. *Sever,* 985 F.2d 1221, 1226 (3d Cir.) (in hybrid action, plaintiff must "prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa"), cert. denied, 509 U.S. 923, 113 S. Ct. 3038, 125 L. Ed. 2d 725 (1993); cf. *Saccardi* v. *Board of Education,* 45 Conn. App. 712, 722, 697 A.2d 716 (1997) ("[when] the collective bargaining agreement permits only the union to take a grievance to arbitration,

---

[24] In his brief to this court, the plaintiff concedes that his claims against the unions and the board of education "are inextricably intertwined" and "cannot be separated . . . ."

the employee has no further remedy unless he can prove that the union breached its duty of fair representation by acting arbitrarily, maliciously, or in bad faith"). As we previously have explained, the plaintiff's claim regarding the breach of the collective bargaining agreement is predicated entirely on his claim that the unions breached their duty of fair representation in processing his grievance against the board of education. The plaintiff has alleged that, but for the unions' failure to represent his interests fairly and adequately in the predisciplinary and arbitration proceedings, the board of education would not have had just cause to terminate him because the evidence adduced by the unions would have demonstrated that such a sanction was unjustified in light of the plaintiff's employment and disciplinary history when compared to the employment and disciplinary history of similarly situated employees. Accordingly, this action is predominantly one for breach of the duty of fair representation, in which the plaintiff alleges that the unions' misconduct resulted in his termination, and for which he seeks, by way of remedy, reinstatement to his former position with back pay. For the reasons previously set forth in this opinion, the plaintiff must exhaust his administrative remedies with the board of labor relations before obtaining judicial review of his claims.[25]

---

[25] The plaintiff advances two additional reasons why he should not be required to exhaust his remedies with the board of labor relations, neither of which we find persuasive. First, he contends that he should not have to exhaust those remedies because prior decisions of the board of labor relations have established clear legal principles governing the resolution of claims alleging a breach of the duty of fair representation, and the trial court would have no difficulty applying those principles to the present case. We are not aware of any such exception to the exhaustion doctrine, and we decline to recognize one because it would undermine the beneficial purposes of the doctrine. See footnote 13 of this opinion. The plaintiff also contends that, even if we conclude that claims alleging breach of the duty of fair representation must first be presented to the board of labor relations, we should exempt the present case from this requirement because the plaintiff reasonably relied on prior precedent indicating that the Superior Court and the board of labor relations have concurrent jurisdiction over

The judgment is affirmed.

In this opinion the other justices concurred.

such claims. In support of this argument, the plaintiff relies primarily on *Leahy* v. *Local 1526, American Federation of State, County & Municipal Employees*, 399 Mass. 341, 504 N.E.2d 602 (1987). In *Leahy*, the Supreme Judicial Court of Massachusetts concluded that, although a claim alleging a union's breach of its duty of fair representation generally will be considered in the first instance by the Massachusetts labor relations commission, recourse to the commission was not required in that case for compelling equitable reasons. See id., 349–51. The plaintiff's claim is without merit in light of our conclusion that the Superior Court lacks subject matter jurisdiction over claims alleging a breach of the duty of fair representation that have not first been presented to the board of labor relations. Furthermore, the plaintiff's reliance on *Leahy* is misplaced because, in that case, the court interpreted the governing Massachusetts statute as creating *primary* jurisdiction in the commission; id., 349; a doctrine that permits the court to refer the case to the administrative agency but does not divest the court of jurisdiction. Id. ("Primary jurisdiction is a doctrine exercised in the discretion of the court. . . . The doctrine does not divest the courts of the power to review cases; rather, it concerns the timing of the court's involvement." [Citation omitted.]); see also footnote 18 of this opinion.