## COUNCIL 4, AFSCME, AFL-CIO *v.* STATE BOARD OF LABOR RELATIONS ET AL.
### (AC 28700)

Bishop, Harper and Cretella, Js.

Argued September 16—officially released December 23, 2008

*J. William Gagne, Jr.*, with whom, on the brief, was *Kimberly A. Cuneo*, for the appellant (plaintiff).

*Alexandra Gross*, assistant general counsel, with whom, on the brief, was *Jaye Bailey*, general counsel, for the appellee (named defendant).

*Timothy Brignole*, with whom, on the brief, was *Juri E. Taalman*, for the appellees (defendant Donna Bligh et al.).

*Opinion*

CRETELLA, J. The plaintiff, Council 4, AFSCME, AFL-CIO (union), appeals from the judgment of the trial court affirming the decision of the defendant state board of labor relations (labor board). On appeal, the union claims that the court should not have affirmed the decision of the labor board because the labor board's determination that the union violated its duty of fair representation to its member, the defendant Donna Bligh, was clearly erroneous, as it was not supported by substantial evidence. We disagree. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to the union's appeal. In July, 2000, Bligh was employed by the East Granby board of education (board of education) as a nonunion, full-time secretary to the superintendent of schools with an hourly wage of $19.25. In March, 2001, Bligh sought and obtained a union position with the board of education as a secretary at Allgrove School. In this new position, Bligh continued to receive the same pay of $19.25 per hour.

In October, 2001, another secretary employed by the board of education reported to the union president that Bligh was not being paid in accordance with the collective bargaining agreement pay schedule. The union filed a level one grievance on March 25, 2002, claiming that the superintendent of schools did not follow the appropriate salary scale contained in the collective bargaining agreement when he filled the vacant secretarial position at Allgrove School. As a remedy, the union requested that Bligh's salary be adjusted downward to $15.97 per hour in accordance with the salary schedule in the 2002 collective bargaining agreement.

The union did not inform Bligh of the grievance. Bligh first learned of it from the superintendent of schools. Bligh then contacted the new president of the union to

inquire as to whether the grievance would affect her hourly wage and to request representation. The union president refused to answer Bligh's questions directly and told her that it was a matter between the union and the board of education concerning an alleged breach of the collective bargaining agreement and that she did not need representation.

On April 5, 2002, the superintendent of schools denied the grievance, stating that Bligh was earning $19.25 per hour in her previous position and that salary was consistent with other employees in similar positions. The union then appealed from the denial to a level three[1] grievance hearing before the board of education. Upon learning of the appeal, Bligh again contacted the union president to inquire as to whether the grievance would affect her pay and to request representation at the hearing. She again was informed that the grievance was against the superintendent and, therefore, did not involve her and that she did not need representation. Bligh then retained her own counsel, Timothy Brignole, who also is a defendant in this matter. By letter dated April 26, 2002, from Brignole to the union president, Brignole demanded that the union provide Bligh with representation. He did not receive a reply to the letter and was later advised that Bligh did not need to attend the level three grievance hearing, as it did not pertain to her.

In June, 2002, the board of education held the grievance hearing and subsequently denied the union's appeal. The union then appealed the grievance to level four, which required arbitration before the state board of mediation and arbitration (mediation board). On the day of the arbitration proceedings, the board of education and the union entered into a voluntary settlement agreement. The agreement included, among other

---

[1] The union chose to have a combined level one and level two hearing.

things, that Bligh's salary rate would remain at $19.25 per hour and not be reduced to $15.97 per hour. Pursuant to the agreement, the union withdrew the grievance and the demand for arbitration.

On August 27, 2003, Bligh filed a complaint with the labor board, alleging that the union had breached its duty of fair representation[2] by arbitrarily filing and pursuing a grievance that aimed to reduce her wage rate, refusing to provide her with representation and treating her disparately. The union and Bligh, represented by Brignole, appeared before the labor board for a hearing on May 3 and 25, 2004. At the hearings, both parties were afforded the opportunity to introduce evidence, to examine and to cross-examine witnesses, to make argument and to submit posthearing briefs. The labor board issued its decision on July 28, 2005.

In its decision, the labor board determined that the union had breached its duty to Bligh of fair representation by acting discriminatorily and in bad faith. The labor board found that because the union had been aware of other bargaining unit members with similar circumstances, the union had engaged in discriminatory conduct when it pursued a grievance and requested a remedy that would have adversely affected Bligh but did not pursue a grievance involving the other bargaining unit members. The labor board concluded that the union had acted in bad faith in that it was deceitful and intentionally misleading in its representations to Bligh regarding the pending grievance. The labor board

---

[2] General Statutes § 7-468 (d) of the Municipal Employees Relations Act, General Statutes § 7-460 et seq., provides: "When an employee organization has been designated in accordance with the provisions of sections 7-467 to 7-477 inclusive, as the exclusive representative of employees in an appropriate unit, it shall have a duty of fair representation to the members of that unit."

General Statutes § 7-470 (b) provides in relevant part: "Employee organizations or their agents are prohibited from . . . (3) breaching their duty of fair representation pursuant to section 7-468 . . . ."

found that the responses of the union president to the inquiries of Bligh were "evasive and dishonestly misleading" and that the union's conduct could in no way be construed to further the best interests of its member, Bligh. The labor board determined that the proper effective remedy would be for the union to pay Bligh's attorney's fees and other costs incurred during the course of the grievance proceedings, as well as the processing of the labor board case.

On August 25, 2005, the union, pursuant to General Statutes § 4-183 (a)[3] of the Uniform Administrative Procedure Act (UAPA), appealed from the labor board's decision to the Superior Court, seeking a reversal of it. The basis of its appeal was that the labor board's decision that the union had breached its duty of fair representation to Bligh was not supported by substantial evidence. On March 28, 2007, the Superior Court issued its judgment, affirming the labor board's decision. The court found that there was substantial evidence in the record to support the labor board's findings of fact and conclusion that the union acted discriminatorily and in bad faith, in violation of the duty of fair representation. The court also found that the labor board properly awarded attorney's fees and costs to Bligh. It is from this decision that the union appeals.

"At the outset, we set forth the applicable standard of review with regard to the trial court's review of the findings of fact and conclusions of law of the [labor board]. [J]udicial review of the [labor board's] action is governed by the [UAPA, General Statutes §§ 4-183 (j), 4-184], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision

---

[3] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our [standard of review] is to determine, in view of all of the evidence, whether the agency . . . acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 68, 942 A.2d 345 (2008).

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. [See] General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . . It is fundamental that a plaintiff has the burden of proving that the [agency], on the facts before [it], acted contrary to law and in abuse of [its] discretion . . . . The law is also well established that if the decision of the [agency] is reasonably supported by the evidence it must be sustained." (Citation omitted; internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 833–34, 955 A.2d 15 (2008). "This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review." (Internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 742, 945 A.2d 936 (2008).

The standard for a claim of breach of duty of fair representation is well established. "A union must represent its members in good faith. This duty of fair representation derives from the union's status as the sole bargaining representative for its members. As such, the union has the exclusive right and obligation to act for its members and to represent their interests. . . . The duty of fair representation requires the union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion in complete good faith and honesty, and to avoid arbitrary conduct. . . . A union breaches this duty if it acts arbitrarily, discriminatorily or in bad faith. . . .

"[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational. . . . Furthermore, a union's actions are in bad faith if the union acts fraudulently or deceitfully . . . or does not act to further the best interests of its members." (Citations omitted; internal quotation marks omitted.) *Labbe* v. *Hartford Pension Commission*, 239 Conn. 168, 193–95, 682 A.2d 490 (1996).

In this appeal, the union argues that the labor board's legal conclusion that it breached its duty of fair representation to Bligh is clearly erroneous, as it is not supported by substantial evidence because there are no facts that show that Bligh was being treated differently from similarly situated employees or that the union acted in bad faith. The union also claims that the decision was not supported by substantial evidence because neither the filing of a grievance that may have an adverse affect on a member, nor the failure to provide a member with representation, constitute a breach of the duty of fair representation.

We first note that neither the labor board, in deciding that the union breached its duty, nor the court, in concluding that there was substantial evidence in the record to support that decision, relied on the fact that the union failed to supply Bligh with representation. Moreover, both the labor board and the court acknowledged that pursuing a grievance that may have an adverse affect on a member would not, by itself, constitute a breach of the union's duty of fair representation. The labor board found that the union had pursued a grievance that would have adversely affected Bligh but did not pursue a grievance that would have adversely affected two other union members when, like Bligh, they both had been employed in nonbargaining unit positions and upon joining the bargaining unit, were paid hourly rates that exceeded the top rate listed in the salary schedule. The labor board concluded that such a course of action was discriminatory and, therefore, constituted a breach of the duty of fair representation.

The union's argument that this determination by the labor board is not supported by the facts in the record is unpersuasive. The union maintains that the facts show that other bargaining unit members were not similarly situated to Bligh because they had been employed by the board of education for more than six years, and, therefore, their wages were calculated on the basis of their rate, times the percentage increase for each year beyond the sixth year. This claim, however, is refuted by the collective bargaining agreement, which provides that hiring rates are at the sole discretion of the board of education, and makes no mention of such a formula. In addition, there was evidence produced that the past practice was that personnel who transferred from nonunion positions to union positions simply retained their nonunion salaries.

Accordingly, the evidence before the labor board was that these employees, like Bligh, were being paid above the top rate listed in the salary schedule upon joining the bargaining unit, yet the union did not pursue a grievance against them. Treating a person differently from similarly situated persons is discrimination; *Tuchman* v. *State*, 89 Conn. App. 745, 759, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005); and acting discriminatorily constitutes a breach of the duty of fair representation. *Labbe* v. *Hartford Pension Commission*, supra, 239 Conn. 194. Thus, we agree with the court that the facts in the record constitute substantial evidence to support the labor board's conclusion that the union breached its duty by acting discriminatorily.

The union alternatively argues that even if the other employees were similarly situated, it had no way of knowing that and, therefore, could not take action against them. In a letter copied to the union and dated June 10, 2002, Brignole, however, enclosed documents that showed that other employees were brought into the union at the pay rate they had as nonunion employees, even though that pay rate exceeded the top rate on the salary scale. We agree with the labor board and the court that this correspondence, which was brought to the attention of the labor board at the May 25, 2004 hearing, is sound evidence that the union was well aware of the situations of these other employees prior to the June, 2002 hearing before the board of education, but the union nevertheless continued to pursue the grievance only against Bligh.

We also conclude that there was substantial evidence to support the labor board's finding that the union breached its duty of fair representation by acting in bad faith. The fact that the union repeatedly informed Bligh that the grievance did not involve her and advised her not to obtain representation when Bligh's salary was

at stake, supports the conclusion that the union intentionally and dishonestly misled her and was not acting in her best interest. Although there was conflicting testimony as to the content of the conversations between the union and Bligh, the labor board resolved these issues in Bligh's favor. Issues of credibility are in the sole province of the trier of fact and will not be reviewed on appeal. *Sanders* v. *Dias*, 108 Conn. App. 283, 294, 947 A.2d 1026 (2008).

Finally, the imposition of attorney's fees and costs is consistent with General Statutes § 7-471 (5), which requires the labor board to "take such further affirmative action as will effectuate the policies of [collective bargaining under the Municipal Employees Relations Act, General Statutes § 7-460 et seq.]" upon finding that a prohibited practice has been committed. The award to a prevailing party of costs and expenses is well within the discretion of the labor board, so long as the union had the opportunity to examine and to challenge the reasonableness of the attorney's fees and costs incurred. See *Local 1042, AFSCME, Council 4, AFL-CIO* v. *State Board of Labor Relations*, Superior Court, judicial district of New Britain, Docket No. CV-99-0493379-S (June 1, 1999) (*McWeeny, J.*) (24 Conn. L. Rptr. 616). In the present case, the labor board made a specific finding that the award would be an effective and legitimate remedy for breach by the union of the duty of fair representation. We agree.

The judgment is affirmed.

In this opinion the other judges concurred.