MICHAEL EAGEN *v.* COMMISSION ON HUMAN
RIGHTS AND OPPORTUNITIES ET AL.
(AC 33241)

Beach, Bear and Schaller, Js.

---

Argued February 14—officially released May 22, 2012

*Antoria D. Howard,* assistant attorney general, with whom, on the brief, were *George Jepsen,* attorney general, and *Josephine S. Graff,* assistant attorney general, for the appellant (plaintiff).

*David M. Teed,* assistant attorney general, with whom, on the brief, was *George Jepsen,* attorney general, for the appellee (named defendant).

*Rose Longo-McLean*, with whom, on the brief, was *John R. Williams*, for the appellee (defendant Daniel Schwartz).

*Opinion*

BEAR, J. The plaintiff, Michael Eagen, an attorney employed by the University of Connecticut (university) as a labor and employment specialist, appeals from the judgment of the trial court dismissing his appeal from the decision of the human rights referee (referee) from the defendant commission on human rights and opportunities, office of public hearings (office of public hearings), finding that the plaintiff, in violation of General Statutes (Rev. to 2007) § 4-61dd (b) (1),[1] had retaliated

[1] General Statutes (Rev. to 2007) § 4-61dd provides in relevant part: "(a) Any person having knowledge of any matter involving corruption, unethical practices, violation of state laws or regulations, mismanagement, gross waste of funds, abuse of authority or danger to the public safety occurring in any state department or agency . . . may transmit all facts and information in such person's possession concerning such matter to the Auditors of Public Accounts. The Auditors of Public Accounts shall review such matter and report their findings and any recommendations to the Attorney General. Upon receiving such a report, the Attorney General shall make such investigation as the Attorney General deems proper regarding such report and any other information that may be reasonably derived from such report. . . . Upon the conclusion of the investigation, the Attorney General shall where necessary, report any findings to the Governor, or in matters involving criminal activity, to the Chief State's Attorney. . . .

"(b) (1) No state officer or employee, as defined in section 4-141, no quasi-public agency officer or employee, no officer or employee of a large state contractor and no appointing authority shall take or threaten to take any personnel action against any state or quasi-public agency employee or any employee of a large state contractor in retaliation for such employee's or contractor's disclosure of information to (A) an employee of the Auditors of Public Accounts or the Attorney General under the provisions of subsection (a) of this section; (B) an employee of the state agency or quasi-public agency where such state officer or employee is employed; (C) an employee of a state agency pursuant to a mandated reporter statute; or (D) in the case of a large state contractor, an employee of the contracting state agency concerning information involving the large state contract.

"(2) If a state . . . agency employee . . . alleges that a personnel action has been threatened or taken in violation of subdivision (1) of this subsection, the employee may notify the Attorney General, who shall investigate pursuant to subsection (a) of this section.

"(3) (A) Not later than thirty days after learning of the specific incident giving rise to a claim that a personnel action has been threatened or has

occurred in violation of subdivision (1) of this subsection, a state . . . agency employee . . . may file a complaint concerning such personnel action with the Chief Human Rights Referee designated under section 46a-57. The Chief Human Rights Referee shall assign the complaint to a human rights referee appointed under section 46a-57, who shall conduct a hearing and issue a decision concerning whether the officer or employee taking or threatening to take the personnel action violated any provision of this section. If the human rights referee finds such a violation, the referee may award the aggrieved employee reinstatement to the employee's former position, back pay and reestablishment of any employee benefits for which the employee would otherwise have been eligible if such violation had not occurred, reasonable attorneys' fees, and any other damages. For the purposes of this subsection, such human rights referee shall act as an independent hearing officer. The decision of a human rights referee under this subsection may be appealed by any person who was a party at such hearing, in accordance with the provisions of section 4-183. . . .

"(5) In any proceeding under subdivision (2), (3) or (4) of this subsection concerning a personnel action taken or threatened against any state . . . agency employee . . . which personnel action occurs not later than one year after the employee first transmits facts and information concerning a matter under subsection (a) of this section to the Auditors of Public Accounts or the Attorney General, there shall be a rebuttable presumption that the personnel action is in retaliation for the action taken by the employee under subsection (a) of this section.

"(6) If a state officer or employee . . . a quasi-public agency officer or employee, an officer or employee of a large state contractor or an appointing authority takes or threatens to take any action to impede, fail to renew or cancel a contract between a state agency and a large state contractor, or between a large state contractor and its subcontractor, in retaliation for the disclosure of information pursuant to subsection (a) of this section to any agency listed in subdivision (1) of this subsection, such affected agency, contractor or subcontractor may, not later than ninety days after learning of such action, threat or failure to renew, bring a civil action in the superior court for the judicial district of Hartford to recover damages, attorney's fees and costs. . . .

"(e) Each contract between a state or quasi-public agency and a large state contractor shall provide that, if an officer, employee or appointing authority of a large state contractor takes or threatens to take any personnel action against any employee of the contractor in retaliation for such employee's disclosure of information to any employee of the contracting state or quasi-public agency or the Auditors of Public Accounts or the Attorney General under the provisions of subsection (a) of this section, the contractor shall be liable for a civil penalty of not more than five thousand dollars for each offense, up to a maximum of twenty per cent of the value of the contract. Each violation shall be a separate and distinct offense and in the case of a continuing violation each calendar day's continuance of the violation shall be deemed to be a separate and distinct offense. The executive head of the state or quasi-public agency may request the Attorney General to bring a civil action in the superior court for the judicial district of Hartford to seek imposition and recovery of such civil penalty. . . ."

against the defendant Daniel Schwartz, a former university laboratory animal veterinarian, for Schwartz' whistle-blowing activities.[2] On appeal, the plaintiff claims that the court erred in dismissing his appeal because (1) the referee improperly expanded the scope of § 4-61dd by interpreting the term "personnel action" to mean "employment action," (2) there was not substantial evidence to show that the plaintiff had retaliated against Schwartz and (3) the court should have considered errors of fact made by the referee. We affirm the judgment of the trial court.

The following facts and procedural history are necessary to our resolution of the plaintiff's appeal. The university hired Schwartz as a part-time consultant and attending veterinarian in December, 1995, and, in September, 1996, it hired him as a full-time attending laboratory animal veterinarian in the office of animal research services (animal research office). The university hired the plaintiff as its labor and employment specialist in 2005, and his duties include involvement in disciplinary matters. Over the course of Schwartz' employment with the university, he filed several complaints, both with the university and with outside agencies, concerning incidents at the animal research office, allegedly involving improper hiring practices, maltreatment of animals, unauthorized access to and improper distribution of restricted or controlled substances, unethical practices and violations of federal and state law. The plaintiff was aware of Schwartz' complaints, as was Schwartz' supervisor, Cecile Baccanale, the director of the animal research office. Many other university employees also were aware of Schwartz' complaints. In August, 2007, the plaintiff drafted a letter to Schwartz, which was signed by Gregory Anderson, the university's vice provost for research and graduate education and dean of

---

[2] We refer to Schwartz and the office of public hearings jointly as the defendants unless otherwise necessary.

the graduate school, stating that the university was considering disciplinary action against him on the basis of a report submitted by Baccanale.

In January, 2008, Baccanale discovered medical supplies in the office pharmacy that she thought had expired, which would have been a violation of United States Department of Agriculture regulations, and that those supplies had been placed there by Schwartz. She hoped that an investigation would lead to Schwartz and result in the termination of his employment with the university. The investigation revealed, however, that the medical supplies, although old, had not expired and that they had been in the pharmacy for at least six months.

Since April, 2008, the plaintiff had been aware that Baccanale wanted Schwartz' e-mails examined to see if he was the source of a "leak" at the animal research office. In June, 2008, the plaintiff received an e-mail from the university's provost, Peter Nicholls, advising him, and others, that Schwartz was engaging in discussions with Kim Fearney, from the university's office of audit, compliance and ethics, regarding complaints of unethical practices, mismanagement and violations of state laws or regulations.

In a July 29, 2008 letter, the university placed Schwartz on paid administrative leave and informed him that he was not to visit the university's Storrs campus or have contact with university personnel without obtaining prior written permission from Baccanale. He also was informed that a dismissal hearing would be conducted and that dismissal was being initiated because of "ongoing concerns regarding [his] work performance, poor judgment in carrying out [his] duties, and failure to constructively resolve problems associated with animal care." The university also disabled his access to his university e-mail, computer and voice mail.

Via correspondence dated September 16, 2008, Nicholls notified Schwartz that, effective September 19, 2008, Schwartz' employment with the university would be terminated. Nicholls also told Schwartz to make arrangements with Jay Hickey from the university's human resources department to retrieve his personal belongings from the animal research office. This correspondence imposed no restrictions on Schwartz' access to the university's Storrs campus.

On September 18, 2008, the plaintiff advised his supervisor, Donna Munroe, the associate vice president of human resources and payroll services, that he would supervise the packing and home delivery of Schwartz' personal belongings so that Schwartz did not have to come into the animal research office. Schwartz inquired about his personal belongings on at least six dates between September 22, 2008, and December 5, 2008. Schwartz was willing to pack his personal belongings himself and was willing to have security personnel present while he packed. The plaintiff initiated and drafted correspondence, which was revised and signed by attorney Keith Hood, the university's manager of labor relations, informing Schwartz that he was not permitted to visit campus facilities, such as offices, classroom buildings or laboratories, without a prior appointment and the prior approval of the appropriate administrator of the facility, but that he was free, however, to visit areas that were accessible to the public, such as the library and the auditorium.

On September 29, 2008, Schwartz went to the university's department of human resources to discuss his health care coverage and attempted to speak with Hickey about obtaining his personal belongings. Hickey was not available, and Schwartz, instead, was met by Hood, who told him that he needed to make an appointment before visiting the university, including the human resources department. Later that day, Schwartz

e-mailed Hickey about obtaining his personal belongings. Also on September 29, 2008, Schwartz e-mailed Hood requesting permission to attend a seminar at the university. On September 30, 2008, Hickey told Schwartz that the animal research office would pack his belongings with a representative from human resources and that they would be delivered to the union office. Schwartz expressed concerns to Hickey and to the president of the university about his belongings. The university's policies provide that an employee separated from employment is to be reminded to collect his or her personal belongings. On October 3, 2008, Hood denied Schwartz' request to attend the university seminar.

On October 27, 2008, the university delivered to Schwartz twenty-four boxes containing personal belongings. On that date, Schwartz also was permitted to go to the animal research office to retrieve some specific personal belongings, but he was not permitted to look through or take boxes that already were packed. On October 29, 2008, Schwartz provided to his union a partial list of items that had not been returned to him. On November 10, 2008, Schwartz attended, without incident, a luncheon at which some of his former coworkers were present.

The referee found that Schwartz had never threatened any of his coworkers.

On November 19, 2008, Schwartz filed a whistleblower retaliation complaint with the chief human rights referee of the office of public hearings pursuant to § 4-61dd, alleging that the plaintiff had retaliated against him for his whistle-blowing activities. On December 5, 2008, the university delivered to Schwartz an additional eleven boxes of his personal belongings. Schwartz, on that same day, notified his union of other items of his personal property that still had not been delivered to him. On January 15, 2009, the university

delivered some additional items to Schwartz. These items had been packed by the plaintiff's administrative assistant and by a representative of the animal research office. Some of Schwartz' personal belongings were not returned to him, including United States Department of Agriculture forms that specifically had been issued and assigned to him, a letter of appreciation from the American Association of Laboratory Animal Science for Schwartz' donation of the proceeds from the sales of a book he had written and significant material he had received during his years as a member and officer of the American Association of Laboratory Animal Science.

In a February 18, 2010 decision, the referee, utilizing the burden shifting framework from the federal antidiscrimination statutes, as articulated in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), found that the plaintiff had violated § 4-61dd by acting with retaliatory animus against Schwartz in failing to return all of Schwartz' personal belongings following the termination of his employment, and the referee ordered the plaintiff to pay to Schwartz $5000 in damages for emotional distress. The plaintiff appealed from that decision to the Superior Court, which concluded that the referee's decision was supported by substantial evidence and dismissed the appeal. This appeal followed.

On appeal, the plaintiff claims that the court erred in dismissing his appeal because (1) the referee improperly expanded the scope of § 4-61dd by interpreting the term "personnel action" to mean "employment action," (2) there was not substantial evidence to show that he had retaliated against Schwartz and (3) the court should have considered errors of fact made by the referee. The office of public hearings argues that whistle-blower statutes all across the country, including other whistle-blower statutes in this state, utilize the *McDonnell Douglas Corp.* framework; see *McDonnell Douglas*

*Corp.* v. *Green,* supra, 411 U.S. 802; and that the plaintiff has not pointed to any case law to the contrary, nor has the plaintiff offered any other standards that he believes should have been utilized in place of the *McDonnell Douglas Corp.* standards or explained what effect a different standard would have had on the outcome of this case. A search of our appellate case law, as well as the case law of the Superior Court, reveals no other whistle-blower retaliation case specifically brought under § 4-61dd. After setting forth our standard of review for appeals pursuant to General Statutes § 4-183 of the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., we will consider each of the plaintiff's claims in turn.

"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [I]t is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . [A]s to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency

must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citation omitted; internal quotation marks omitted.) *Blinkoff* v. *Commission on Human Rights & Opportunities*, 129 Conn. App. 714, 720–21, 20 A.3d 1272, cert. denied, 302 Conn. 922, 28 A.3d 341 (2011).

I

The plaintiff first claims that the court erred in dismissing his appeal because the referee improperly expanded the scope of § 4-61dd by interpreting the term "personnel action" to mean "employment action." Specifically, the plaintiff explains: "[S]ection 4-61dd's scope is *narrower* than the statutory anti-discrimination prohibitions. Both Title VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII)] and the Connecticut Fair Employment Practices Act [General Statutes § 46a-51 et seq.] . . . require an 'adverse employment action' while in contrast, § 4-61dd requires an adverse 'personnel action.' "[3] (Emphasis in original.) He further explains: "In laying out the elements of a § 4-61dd [action], the statute expressly states that a whistleblower must not be subjected to a 'personnel action.' The statute does not use the words 'employment action'. As such, Title VII cases are not applicable to § 4-61dd cases," and the referee improperly utilized the burden shifting framework established by *McDonnell Douglas Corp.* when deciding this case. In the alternative, the plaintiff argues that, even if we were to conclude that the terms "personnel action" and "employment action" had the same or similar meanings, the failure of the plaintiff to return Schwartz' personal belongings after

[3] Although the plaintiff repeatedly states that § 4-61dd requires an "adverse personnel action," the statute actually refers to *"any personnel action,"* and forbids the *taking or threatening to take any personnel action* with retaliatory animus. (Emphasis added.) General Statutes (Rev. to 2007) § 4-61dd (b) (1).

his discharge could not be considered an "adverse employment action." In response, the defendants argue that the court's construction of the term "personnel action" as having essentially the same meaning as "employment action" was correct and that the referee utilized the proper standard in deciding this case. Furthermore, the defendants argue that, although the plaintiff contends that these terms have differing meanings, the plaintiff fails to explain or set forth the alleged differences or what standard the referee should have utilized. Additionally, they argue that the plaintiff's actions in failing to return Schwartz' personal belongings properly were considered to be an adverse employment action, which is defined in case law as an action that "would dissuade a reasonable employee from whistle-blowing." (Internal quotation marks omitted.) We will consider this claim in two parts, beginning with the meaning of term "personnel action," as used in § 4-61dd.[4]

A

"When interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case,

[4] The plaintiff, although citing a very brief portion of the legislative history of the bill that ultimately became § 4-61dd, does not claim that the statute is ambiguous. He cites only a statement made by Representative James A. O'Rourke III, a sponsor of the bill, who, when asked if he intended there to be a rebuttable presumption as in *McDonnell Douglas Corp.*, stated that he had not read the *McDonnell Douglas Corp.* case and, thus, that it was not his intent to link that case to the bill. See 45 H.R. Proc., Pt. 9, 2002 Sess., p. 2940, remarks of Representative O'Rourke. Contrary to what the plaintiff argues, Representative O'Rourke's statement, on its face, does not "expressly [state] that the legislature did not intend for the burden shifting framework of *McDonnell Douglas Corp.* to apply to § 4-61dd." It merely states that he had not read the case and had no specific intent to link the case to the bill.

including the question of whether the language actually does apply. . . . General Statutes § 1-2z requires this court first to consider the text of the statute and its relationship to other statutes to determine its meaning. If, after such consideration, the meaning of the statutory text is plain and unambiguous and does not yield absurd or unworkable results, we cannot consider extratextual evidence of the meaning of the statute. . . . Only if we determine that the text of the statute is not plain and unambiguous may we look to extratextual evidence of its meaning, such as the legislative history and circumstances surrounding its enactment . . . the legislative policy it was designed to implement, and . . . its relationship to existing legislation and common law principles governing the same general subject matter . . . . The proper test to determine whether the meaning of the text of a statute is ambiguous is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 631–32, 6 A.3d 60 (2010).

By its terms, § 4-61dd seeks to protect "[a]ny person having knowledge of any matter involving corruption, unethical practices, violation of state laws or regulations, mismanagement, gross waste of funds, abuse of authority or danger to the public safety occurring in any state department or agency or any quasi-public agency, as defined in section 1-120, or any person having knowledge of any matter involving corruption, violation of state or federal laws or regulations, gross waste of funds, abuse of authority or danger to the public safety occurring in any large state contract," who discloses such activities. General Statutes (Rev. to 2007) § 4-61dd (a). In an attempt to provide such protection, the statute mandates that "[n]o state officer or employee . . . no quasi-public agency officer or employee, no officer or employee of a large state contractor and no appointing

authority shall take or threaten to take any personnel action against any state or quasi-public agency employee or any employee of a large state contractor in retaliation for such employee's or contractor's disclosure of information to (A) an employee of the Auditors of Public Accounts or the Attorney General under the provisions of subsection (a) of this section; (B) an employee of the state agency or quasi-public agency where such state officer or employee is employed; (C) an employee of a state agency pursuant to a mandated reporter statute; or (D) in the case of a large state contractor, an employee of the contracting state agency concerning information involving the large state contract." General Statutes (Rev. to 2007) § 4-61dd (b) (1).

In construing this statute, the plaintiff essentially argues that the term "personnel action" does not have the same meaning as "employment action," that "personnel action" should be construed more narrowly than "employment action" and that, therefore, the referee erred by applying the standards used in adverse employment action cases to a claim brought under § 4-61dd. The plaintiff does not define the meaning of the terms "personnel action" and "employment action," nor does he explain how they differ. Furthermore, he fails to explain, if the adverse employment action standard, typically used in retaliation and discrimination cases, does not apply to § 4-61dd cases, what is the appropriate standard to be applied in § 4-61dd cases. We also have reviewed the record, including the transcripts from the hearings before the office of public hearings, and it does not appear that the plaintiff argued before the referee that there existed a distinction between the terms "personnel action" and "employment action," nor does it appear that he argued that the referee should use a standard other than the "adverse employment action" standard utilized in retaliation and discrimination cases, which standard also consistently has been

utilized by the office of public hearings in § 4-61dd cases.

During closing argument before the office of public hearings, the plaintiff argued that Schwartz "ha[d] to make out a prima facie case and the burden there is de minimis . . . ." He argued that in order to establish a prima facie case of whistle-blower retaliation in this case, Schwartz had to satisfy three prongs: (1) "that he is a [whistle-blower], [who] was engaged in protected activity . . . . [W]e have conceded that . . . that prong is met," (2) "that he was subjected to an adverse employment or adverse personnel action," and (3) that "there [is] a causal connection between that adverse personnel action and the . . . protect[ed] activity." The plaintiff also argued that "the case law says that mere speculative or hypothetical possibilities are not material adverse personnel actions." Additionally, the plaintiff argued that "the second and third prongs of the prima facie case [were not met], but also we . . . believe that the [plaintiff] has put forth a legitimate, nonretaliatory reason for the actions that were taken." After final argument by the parties, the referee considered Schwartz' § 4-61dd claims in a manner consistent with the prior decisions of the office of public hearings, using the burden shifting framework established under *McDonnell Douglas Corp.* and applied to retaliation cases involving adverse employment actions.[5] See *Wilson* v. *State*, OPH/WBR 2008-069 (June, 17, 2011);

[5] In *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990), our Supreme Court adopted the well established employment discrimination burden shifting analysis of *McDonnell Douglas Corp.* for use in discrimination or wrongful discharge cases brought under General Statutes § 31-290a, a provision designed to protect employees who file for workers' compensation benefits. Under the *Ford* analysis, "[t]he plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the

*Saeedi* v. *Dept. of Mental Health & Addiction Services*, OPH/WBR: 2008-090 (December 9, 2010), appeal dismissed, Superior Court, judicial district of New Britain, Docket No. CV-11-6008678S (February 7, 2012); *Gorski* v. *Dept. of Environmental Protection*, OPH/WBR: 2007-061 (January 23, 2009); *Irwin* v. *Lantz*, OPH/WBR: 2007-051 through 2007-056 (May 9, 2008); *Stacy* v. *Dept. of Correction*, OPH/WBR: 2003-002 (March 1, 2004).

presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." (Citations omitted; internal quotation marks omitted.) Id. We also have approved of the use of the *McDonnell Douglas Corp.* framework in retaliatory discharge claims, pursuant to General Statutes § 31-226a, for retaliation against employees assisting former employees with the filing of claims for unemployment compensation; see *Beizer* v. *Dept. of Labor*, 56 Conn. App. 347, 355–56, 742 A.2d 821, cert. denied, 252 Conn. 937, 747 A.2d 1 (2000); in retaliatory discharge claims, pursuant to § 31-290a, for the discharge of employees after they file for workers' compensation benefits; see *Otero* v. *Housing Authority*, 86 Conn. App. 103, 108–109, 860 A.2d 285 (2004); and in whistle-blower claims for retaliation brought pursuant to General Statutes § 31-51m (b), for the discharge of employees who report employers for suspected violations of state and federal law. See *Arnone* v. *Enfield*, 79 Conn. App. 501, 507, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003).

Similar to § 4-61dd, § 31-51m (b) typically is referred to as a whistle-blower statute. Section 31-51m (b) provides: "No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action. No municipal employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, to a public body concerning the unethical practices, mismanagement or abuse of authority by such employer. The provisions of this subsection shall not be applicable when the employee knows that such report is false."

In *Arnone*, this court approved the application of the *McDonnell Douglas Corp.* framework for analyzing whistle-blower claims for retaliatory discharge under § 31-51m (b). *Arnone* v. *Enfield*, supra, 79 Conn. App. 507. This court's decision contains no indication that a different framework would be necessary if the claim under § 31-51m (b), rather than alleging retaliatory discharge, alleged discipline or some other penalty stemming from the employee's good faith whistle-blowing activity, nor do we envision that there would be a necessity to apply a different framework. Although the relevance of *Arnone* and § 31-51m (b) were discussed by the office of

On appeal, the plaintiff argues that the terms "personnel action" and "employment action" are not interchangeable, because "personnel action" is a narrower term. He asserts, therefore, that the *McDonnell Douglas Corp.* burden shifting framework and the adverse employment action standards, commonly used in retaliation cases, do not apply to § 4-61dd cases. He fails to tell us, however, what differences exist between the terms and what alternative framework should be applied in § 4-61dd cases. He simply contends that they are different and that the term personnel action should be construed more narrowly than the term employment action. We conclude otherwise.

The term "personnel action" is not defined either in § 4-61dd or in the regulations of the office of public hearings. Reviewing the plain language of the statute, however, we conclude that the term "personnel action," as used in the statute, encompasses the term "employment action" and that, therefore, the referee applied the correct framework to Schwartz' whistle-blower retaliation claims.

In interpreting our antidiscrimination and antiretaliation statutes, we look to federal law for guidance. "In drafting and modifying the Connecticut Fair Employment Practices Act . . . our legislature modeled that act on its federal counterpart, Title VII . . . and it has sought to keep our state law consistent with federal law in this area. See, e.g., *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, [273 Conn. 373, 385, 870 A.2d 457 (2005)] ('[w]ith the intent of creating a state antidiscrimination housing statute consistent with its federal counterpart, the legislature adopted [General Statutes] § 46a-64c and related

public hearings in its brief to this court, the plaintiff did not address them either in his main brief or in his reply brief.

provisions'). Accordingly, in matters involving the interpretation of the scope of our antidiscrimination statutes, our courts consistently have looked to federal precedent for guidance. *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 164, 717 A.2d 1254 (1998) ('[i]n defining the contours of an employer's duties under our state antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII . . . the federal statutory counterpart to § 46a-60'); *Malasky* v. *Metal Products Corp.*, 44 Conn. App. 446, 454, 689 A.2d 1145 ('[a]lthough the [federal precedent] was concerned primarily with [Equal Employment Opportunity Commission] filing requirements, the same rationale applies to the requirements of the [commission]'), cert. denied, 241 Conn. 906, 695 A.2d 539 (1997)." *Ware* v. *State*, 118 Conn. App. 65, 82, 983 A.2d 853 (2009). We conclude that federal law is an appropriate guide in this retaliation case.

After reviewing the parameters of Title VII, as interpreted by federal case law, we disagree with the plaintiff's contention that the term personnel action should be more narrowly construed than the term employment action and that, therefore, Title VII cases cannot be applicable to § 4-61dd cases. See *Hashimoto* v. *Dalton*, 118 F.3d 671, 676 (9th Cir. 1997) (concluding that dissemination of unfavorable job reference concerning former employee was adverse employment action under Title VII "because it was a 'personnel action' motivated by retaliatory animus"), cert. denied, 523 U.S. 1122, 118 S. Ct. 1803, 140 L. Ed. 2d 943 (1998); *Brown* v. *Brody*, 199 F.3d 446, 452–53 (D.C. Cir. 1999) (using "adverse employment action" and "adverse personnel action" interchangeably in federal employee Title VII case); see also *Allen* v. *Administrative Review Board*, 514 F.3d 468, 475–76, 476 n.2 (5th Cir. 2008) (stating that "unfavorable personnel action" and "adverse employment

action" are used interchangeably for purposes of a federal retaliation claim under Sarbanes-Oxley Act of 2002); *McIntyre* v. *Delhaize America, Inc.*, 403 Fed. Appx. 448, 450–51 (11th Cir. 2010) (explaining that claims under Fla. Stat. § 448.102 of the Florida Whistleblower Act, which provides in relevant part that "[a]n employer may not take any retaliatory personnel action against an employee" are analyzed using burden shifting framework for retaliation cases under Title VII); *Cones* v. *Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) ("no particular type of personnel action [is] automatically excluded from serving as the basis of a cause of action under Title VII, as long as the plaintiff is aggrieved by the action" [internal quotation marks omitted]).

Interestingly, a provision in Title VII, specifically 42 U.S.C. § 2000e-16, which is directed at federal government employees, provides in relevant part: "(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage

"*All personnel actions* affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 . . . in the United States Postal Service and the Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the Government Accounting Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin. . . ." (Emphasis added.)

As explained by the United States Court of Appeals for the Fourth Circuit in *Caldwell* v. *Johnson*, 289 Fed.

Appx. 579, 587–88 (4th Cir. 2008): "We have long held that this language prohibits discrimination in the federal workplace just as § 2000e-2 prohibits discrimination in the private workplace. *Wright* v. [*National Archives & Records Service*], 609 F.2d 702, [705–706] (4th Cir. 1979). Instead of determining whether a 'personnel action' has taken place, our federal employee discrimination cases have instead adopted the private employment standard of whether a plaintiff has suffered an 'adverse employment action.' We have noted that '[a]lthough phrased differently, [42 U.S.C. § 2000e-2 and 42 U.S.C. § 2000e-16 (a)] have generally been treated as comparable, with the standards governing private-sector illegal claims applied to such claims brought by federal employees.' *Baqir* v. *Principi*, 434 F.3d 733, 742 (4th Cir. 2006) (citing *Page* v. *Bolger*, 645 F.2d 227, 233 [4th Cir. 1981] [en banc])."

Guided by federal law, we conclude that the language of § 4-61dd prohibiting any "personnel action" in retaliation for whistle-blowing does not require, as asserted by the plaintiff, a narrower scope than our antidiscrimination statutes that prohibit adverse employment actions.[6]

## B

The plaintiff also claims, in the alternative, that "[e]ven if the court finds that [the office of public hearings] correctly defined adverse personnel action as an adverse employment action, [Schwartz] cannot establish that he was subjected to an adverse employment action." He argues that "[a]n adverse employment action [is defined] as a materially adverse change in the terms and conditions of employment. . . . To be

---

[6] We conclude that it is not necessary for us to determine whether the term "any personnel action," as used in § 4-61dd (b) (1), has a broader scope and application than the term "adverse employment action." Such consideration is not necessary to our holding in this case.

materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. . . . Examples of such a change include termination of employment, demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation. . . . [T]he [employee] must show that [his] employer's actions well might have dissuaded a reasonable worker from making or supporting a charge of [retaliation]." (Citation omitted; internal quotation marks omitted.) The defendants argue that the language of § 4-61dd does not require "extreme measures, such as termination" before its protections are implicated, but, rather, it requires only a "personnel [action that] would dissuade a reasonable employee from whistle-blowing." (Internal quotation marks omitted.) Furthermore, they argue, the acts of withholding and failing to return personal items that were important to Schwartz in retaliation for his protected activities certainly was an action that would dissuade a reasonable person from whistle-blowing. We agree with the defendants.

As stated previously, when interpreting state employment discrimination or retaliation law, we frequently look to federal law for guidance. See, e.g., *Lyon* v. *Jones*, 291 Conn. 384, 406–407, 968 A.2d 416 (2009); *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 705, 900 A.2d 498 (2006); *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990); *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 469–70, 559 A.2d 1120 (1989). In *Burlington Northern & Santa Fe Railway Co.* v. *White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the United States Supreme Court concluded that "the antiretaliation provision [of Title VII] does not confine the actions and harms it

forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."

In *Robinson* v. *Shell Oil Co.*, 519 U.S. 337, 339, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997), the plaintiff, while his discrimination complaint was pending against his former employer, applied for a job with another company, which contacted the former employer for a reference. The plaintiff, alleging that the former employer gave him a negative reference in retaliation for his having filed the discrimination complaint, then filed suit pursuant to § 704 (a) of Title VII; id., 340; which makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment" who have availed themselves of Title VII's protections. (Internal quotation marks omitted.) Id., 339. Reversing the en banc decision of the Fourth Circuit Court of Appeals, which had affirmed the decision of the District Court, the Supreme Court held that the term "employees" in § 704 (a) of Title VII includes former employees as well as current employees. Id., 340–46. The Supreme Court explained that to restrict the statutory antidiscrimination provision to current employees would undermine Title VII's effectiveness "by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining . . . ." Id., 346. Recently, the Supreme Judicial Court of Massachusetts, in *Psy-Ed Corp.* v. *Klein*, 459 Mass. 697, 699, 947 N.E.2d 520 (2011), after looking to federal law for guidance, held that a former employer may be held liable under

Mass. Gen. Laws c. 151B, § 4 (4) and (4A) of the Massachusetts antidiscrimination law "for retaliatory or interfering conduct that occurs after the employment relationship has terminated."

In the present case, the plaintiff argues that the act of withholding or failing to return certain personal items to Schwartz after his termination was nothing more than "a mere inconvenience" and that there is "no evidence showing that the claimed retention of these minimal personal effects would dissuade him or a reasonable employee from making a claim of retaliation."[7] (Internal quotation marks omitted.) Furthermore, he argues, "there is simply no evidence that under § 4-61dd, a claimed retention of minimal personal effects would be considered an adverse employment action." We are not persuaded.

The referee found that the plaintiff "failed to return to [Schwartz] all of his personal property from his office in retaliation of his whistle-blowing. . . . [T]he [plaintiff's] explanation for not allowing [Schwartz] to retrieve his belongings from his office is not worthy of credence and is a pretext for retaliation. The explanation, that Dr. Schwartz' presence 'would be very awkward for him' and 'embarrassing for him' . . . is flatly contradicted by Dr. Schwartz' repeated communications that he wanted to retrieve his belongings . . . by Dr. Schwartz' coming to the university without embarrassment to meet with human resources personnel . . . by Dr. Schwartz coming to the university to retrieve some of his personal belongings from his office on October 27, 2008 . . . . He was also willing to have campus security officers or representatives from his

---

[7] The referee did not find that the plaintiff's withholding of or failure to return Schwartz' personal items was a mere inconvenience, or that Schwartz' property that was not returned to him, or was unreasonably delayed in being returned to him, equated to minimal personal effects. This argument, therefore, is not based on nor supported by any facts in the record.

union present during his packing. . . . The [plaintiff's] refusal to allow Dr. Schwartz to pack his own belongings result[ed] in not all of Dr. Schwartz' personal property being returned to him.

"Dr. Schwartz specifically indentified [items] . . . that [were] not returned to him. . . . He further testified that he received eleven empty folders, but that he did not keep empty folders. . . . In his testimony, the [plaintiff] posited a slightly different explanation for why Dr. Schwartz was not permitted to pack his own belongings: not only was there concern about embarrassing Dr. Schwartz, but there [was] also a security concern about letting him come to his office. . . . This belated security concern lacks credibility not only because it was not raised at the time the decision was made . . . but also because the purported safety concern is discredited by the [plaintiff's] own testimony that he was [not aware] of Dr. Schwartz having threatened anyone. . . . Finally, the purported security concern lacks credibility because Dr. Schwartz was not only allowed to return to his office to pack some items . . . he was also allowed access, without any kind of restrictions, to areas of the university that any member of the public could access . . . ." (Citations omitted.)

The referee further found that "[i]t [was] offensive that Dr. Schwartz was not provided with a time table of when his property would be delivered, that he received no explanation of why it was taking so long to send him his property, that the packing and delivery took nearly four months and that he did not receive all of his personal property. Further, it appears that the second and third deliveries were made only after complaints by Dr. Schwartz that he had not received all the items in the preceding delivery. . . . The knowledge that Dr. Schwartz was not retrieving his own belongings was public. The packing was done by the [plaintiff's] administrative assistant and a representative from [the

office of animal research] . . . and known to other university employees . . . . As was evident from Dr. Schwartz' credible testimony, the impact of the missing items has a continuing emotionally distressful impact." (Citations omitted.)

On the basis of these findings and others, the referee concluded that the plaintiff had retaliated against Schwartz for Schwartz' whistle-blowing activities and that these actions constituted an adverse personnel action because they likely would dissuade a reasonable employee from whistle-blowing. Upon review of this conclusion, the trial court opined that "the referee's application of the law was correct and . . . his conclusion logically follow[ed] from the facts . . . ." On the basis of the record before us, including the previously stated facts as found by the referee, we conclude that the court appropriately determined that the referee's decision was proper.

II

The plaintiff next claims that there was not substantial evidence to show that his actions amounted to retaliation against Schwartz. He argues that some of the items Schwartz claims to have been missing were shown to have been delivered to him and that there was no evidence that the plaintiff retaliated against Schwartz. The defendants argue that "[t]he ultimate issue in this case is whether the admitted five and one-half month delay in . . . [returning Schwartz'] personal property, from July 29, 2008 . . . to January 15, 2009 . . . and the admitted destruction and/or disappearance of at least some . . . personal property, was in retaliation for whistle-blowing. . . . The referee's decision that the delay and destruction of the personal property was in retaliation for whistle-blowing is based upon the credibility of the witnesses. . . . Thus, the referee's decision on the ultimate issue . . . was based squarely on

the credibility of the witnesses [and] [t]he law is well established that the credibility of witnesses is within the exclusive province of the trier." (Citations omitted.) We agree with the defendants.

On the basis of the facts cited in part I B of this opinion and the referee's credibility determinations in this case, specifically the determinations that Schwartz' testimony was credible and that the plaintiff's testimony was not credible, we conclude that there was substantial evidence to support his decision.

## III

The plaintiff's final claim is that the court should have considered errors of fact made by the referee. The defendants argue that this court cannot retry the facts of this case. In the alternative, the defendants argue that if we review the alleged errors of fact, we will conclude that the evidence supports the referee's decision. We agree with the defendants that the plaintiff is asking that we retry the facts of this case, which we cannot do. "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000). "Th[e] substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . *Council 4, AFSCME, AFL-CIO* v. *State Board of Labor Relations*, 111 Conn. App. 666, 672, 961 A.2d 451 (2008), cert. denied, 290 Conn. 901, 967 A.2d 112 (2009); see also

*Brunswick* v. *Statewide Grievance Committee*, 103 Conn. App. 601, 611, 931 A.2d 319, cert. denied, 284 Conn. 929, 934 A.2d 244 (2007)." (Internal quotation marks omitted.) *Papic* v. *Burke*, 113 Conn. App. 198, 210–11, 965 A.2d 633 (2009).

The judgment is affirmed.

In this opinion the other judges concurred.