******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

DEPARTMENT OF PUBLIC HEALTH *v.*
JUANITA ESTRADA ET AL.
(AC 43891)

Alexander, Suarez and DiPentima, Js.

*Syllabus*

The defendant E filed a complaint with the defendant Commission on Human Rights and Opportunities, alleging that her employer, the plaintiff Department of Public Health, had retaliated against her for a protected whistleblower disclosure that she made pursuant to statute (§ 4-61dd). As part of her job duties, E was assigned to review an appointment letter submitted to the department by the then director of health for the city of Hartford, requesting approval of W as the acting director of health for the city. Both the letter and W's resume indicated that W held a master's degree in public health. Although she did not independently verify that W had actually received a master's degree in public health, E drafted a letter approving W's appointment, which the commissioner of the department signed. E later learned that W did not possess a master's degree in public health, and she reported that information to her supervisor. Following this disclosure, E received multiple written reprimands and negative and unsatisfactory performance appraisals, and she was demoted, all of which she claimed were the result of retaliation for her disclosure. A hearing was held before a human rights referee from the commission's Office of Public Hearings, who concluded that E had made a protected whistleblower disclosure under § 4-61dd and that the department had retaliated against her for such disclosure. The department appealed to the trial court, which sustained the appeal, concluding that E's disclosure did not qualify as a whistleblower disclosure under § 4-61dd, that E failed to establish a causal connection between any alleged whistleblower disclosure and the complained of personnel actions, and that the commission lacked subject matter jurisdiction to adjudicate E's complaint because she had brought the same adverse personnel actions at issue through the grievance procedures in her collective bargaining agreement. On appeal to this court, *held*:

1. The trial court erred in concluding that the commission lacked subject matter jurisdiction to adjudicate E's complaint: it was undisputed that § 4-61dd contains a statutory waiver of sovereign immunity and confers on the Office of Public Hearings the authority to adjudicate whistleblower retaliation claims; moreover, the fact that § 4-61dd provides an alternative avenue for a complainant to seek redress for adverse personnel actions taken in retaliation for a whistleblower disclosure, namely, through the procedures provided in an applicable collective bargaining contract, did not deprive the Office of Public Hearings of subject matter jurisdiction over E's claim, as the issue concerned her election of remedies rather than subject matter jurisdiction; accordingly, pursuant to § 4-61dd, the Office of Public Hearings had subject matter jurisdiction to adjudicate E's whistleblower retaliation claim.

2. The trial court properly concluded that E did not make a protected whistleblower disclosure pursuant to § 4-61dd: the educational qualifications required by statute ((Rev. to 2015) § 19a-200) did not apply to W, an acting director of health, because the statute distinguishes between directors of public health, who must, inter alia, possess a degree in public health, and acting directors of health, who must only be deemed suitable to serve as acting director during the period in which the director of public health is absent or unable to serve or in which a vacancy exists; accordingly, because W's appointment did not result in a violation of (Rev. to 2015) § 19a-200, E did not disclose a violation of state law, and she was not entitled to protection under § 4-61dd.

Argued October 14, 2021—officially released March 15, 2022

*Procedural History*

Appeal from the decision of a human rights referee for the defendant Commission on Human Rights and

Opportunities concluding that the named defendant made a protected whistleblower disclosure for which the plaintiff had retaliated, brought to the Superior Court in the judicial district of New Britain, where the court, *Cordani, J.*, rendered judgment sustaining the appeal, from which the defendants appealed to this court. *Affirmed.*

*Anna-Marie Puryear*, human rights attorney, with whom, on the brief, were *Michael E. Roberts*, human rights attorney, and *Eric C. Krupa*, former human rights attorney, for the appellant (defendant Commission on Human Rights and Opportunities).

*Jennifer P. Bennett*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare E. Kindall*, solicitor general, and *Matthew Larock*, assistant attorney general, for the appellee (plaintiff).

*Opinion*

ALEXANDER, J. This appeal arises out of an alleged whistleblower retaliation action filed by the defendant Juanita Estrada in which a human rights referee (referee) from the Office of Public Hearings (office of public hearings) of the defendant Commission on Human Rights and Opportunities (commission) concluded that Estrada made a protected whistleblower disclosure pursuant to General Statutes § 4-61dd. Thereafter, the Superior Court sustained the appeal of the plaintiff, the Department of Public Health (department), concluding that Estrada's disclosure to her supervisor was not a whistleblower disclosure under § 4-61dd, that Estrada failed to establish a causal connection between any alleged whistleblower disclosure and the complained of personnel actions, and that the commission lacked subject matter jurisdiction to adjudicate Estrada's complaint because she had brought the same adverse personnel actions at issue through the grievance procedures in her collective bargaining agreement. On appeal, the commission claims that the court erred (1) in concluding that the commission lacked subject matter jurisdiction to adjudicate Estrada's complaint, (2) in concluding that Estrada did not make a protected whistleblower disclosure pursuant to § 4-61dd, (3) in concluding that Estrada failed to establish a causal connection between the alleged disclosure and the adverse personnel actions, and (4) by failing to apply the proper standard of review in its analysis of the administrative decision. We agree with the commission that the court improperly determined that the commission lacked subject matter jurisdiction to adjudicate Estrada's whistleblower retaliation complaint. We determine, however, that the court properly concluded that Estrada did not make a protected whistleblower disclosure pursuant to § 4-61dd and that the court applied the proper standard of review in making this determination. Accordingly, we affirm the judgment of the court.

The following facts, as found by the referee, and procedural history are relevant to our resolution of the defendants' appeal. Estrada began working for the department in 1995 as an epidemiologist. By 2010, she had been promoted to the position of epidemiologist 4 within the department's division of the Office of Local Health Administration (OLHA). The OLHA is responsible for coordinating with and ensuring delivery of public health services to local health departments. These local health departments are made up of municipal health departments and regional health districts. Pursuant to General Statutes (Rev. to 2015) § 19a-200 (a),[1] the director of each local health department is nominated at the local level.[2]

Section 19a-200 also prescribes the minimum qualifications that a director of health must possess. Pursuant to § 19a-200 (a), the director of health for a municipality

must "(1) be a licensed physician and hold a degree in public health from an accredited school, college, university, or institution, or (2) hold a graduate degree in public health from an accredited school, college or institution. . . ." General Statutes (Rev. to 2015) § 19a-200 (a). Additionally, § 19a-200 (a) provides in relevant part: "In case of the absence or inability to act of a city, town or borough director of health or if a vacancy exists in the office of such director, the appointing authority of such city, town or borough may, with the approval of the [commissioner of the department], designate in writing a suitable person to serve as acting director of health during the period of such absence or inability or vacancy, provided the commissioner [of the department] may appoint such acting director if the city, town or borough fails to do so. The person so designated, when sworn, shall have all the powers and be subject to all the duties of such director. . . ." General Statutes (Rev. to 2015) § 19a-200 (a).

As part of Estrada's job duties as an epidemiologist 4 within the OLHA, she was assigned to review an applicant's qualifications to serve as a director or acting director of health. "[T]he customary process within the OLHA was to review a letter from a municipality or a district board of health appointing an individual to a permanent or acting director of health. Once the OLHA received the appointment letter from a municipality or the district board of health, [Estrada] would review the appointed individual's resume to ensure that it stated that the individual had a graduate degree from an accredited school." "Once [Estrada] reviewed the appointment letter and resume, she would then draft a letter for [Ellen] Blaschinski's[3] review stating that the [department] approved the appointment. After Blaschinski reviewed the letter she would send it [to] the commissioner of [the department] for [the commissioner's] review. Between 2011 and July, 2015, [Estrada] and Blaschinski undertook this process approximately ten times."

"On May 8, 2015, [Raul] Pino, then director of health for the city of Hartford, submitted a letter requesting approval of Ruonan Wang as acting director of health for the city of Hartford." Both Pino's letter and Wang's resume stated that Wang held a master's degree in public health from the University of Connecticut. After receiving the letter and resume, Estrada drafted a letter for Blaschinski's review but did not verify that Wang actually had received a master's degree in public health. The letter subsequently was signed by the commissioner of the department approving Wang's appointment as acting director of health.[4]

On June 17, 2015, an employee of the department notified Estrada that she had received information from an employee of the city of Hartford that Wang did not possess a master's degree in public health. Estrada asked her secretary to contact the University of Con-

necticut, who confirmed that Wang in fact did not receive a master's degree in public health from the university.[5] Thereafter, Estrada reported this new information to Blaschinski.

In July, 2017, Estrada filed an amended complaint with the commission in which she alleged that her report to Blaschinski, which stated that Wang did not possess a graduate degree in public health, disclosed a violation of § 19a-200 because the statute requires that a person nominated for the position of director of health hold a graduate degree in public health. She alleged that this new information constituted a protected whistleblower disclosure pursuant to § 4-61dd. She further claimed that, after her report to Blaschinski, she was subjected to retaliation on multiple occasions. Estrada alleged that, in response to her disclosure, she received multiple "unwarranted and unjustified written reprimand[s]" and "negative and unsatisfactory performance appraisal[s]" and that she was demoted from the position of epidemiologist 4 to epidemiologist 3. Pursuant to § 4-61dd, Estrada sought, inter alia, "compensation for [lost wages], restoration of her position [as] epidemiologist 4, [damages for] emotional distress and loss of enjoyment [of life's activities], the removal of documentation from her personnel file reflecting the acts of retaliation against her, and reimbursement for the attorney's fees and costs that she has incurred . . . ."

A hearing on Estrada's complaint took place in September, 2017. In July, 2018, the referee issued a final decision in which she concluded that Estrada had made a protected whistleblower disclosure under § 4-61dd and that the department had retaliated against her.[6] Thereafter, the department appealed to the Superior Court. On January 14, 2020, after a hearing, the court issued a memorandum of decision sustaining the appeal and rendering judgment for the department. The court concluded that the commission lacked subject matter jurisdiction to adjudicate the complaint, that Estrada had not made a protected whistleblower disclosure under § 4-61dd, and that Estrada had failed to establish a causal connection between any alleged whistleblower disclosure and the alleged retaliation.[7] This appeal followed.

I

We first address the commission's claim that the court erred in concluding that the commission lacked subject matter jurisdiction to adjudicate Estrada's complaint. We agree.

The following additional facts and procedural history are relevant to our resolution of this claim. In its answer to Estrada's amended whistleblower retaliation complaint, the department asserted five special defenses. The first special defense asserted that "[t]he office of

public hearings lacks subject matter jurisdiction over this complaint, as [Estrada] fails to make a valid claim of whistleblower retaliation, as required by . . . § 4-61dd."[8] Additionally, the department filed a "motion to dismiss and/or strike" in which it argued, inter alia, that the office of public hearings lacked jurisdiction "to hear a whistleblower claim for any of [Estrada's] alleged adverse personnel actions for which she has filed a grievance under her collective bargaining contract . . . because the two remedies are mutually exclusive" and that Estrada's claims did not "fall under the purview of . . . § 4-61dd and are therefore barred by sovereign immunity." This motion was denied by the referee.

In its posthearing brief, the department argued that the office of public hearings lacked jurisdiction because § 4-61dd offered Estrada "a clear choice of either filing a grievance or bringing the instant [whistleblower retaliation] case, but not both." (Emphasis omitted.) The department asserted that, because Estrada had filed grievances in connection with the adverse employment actions that she claimed were acts of retaliation in her whistleblower retaliation complaint, the office of public hearings had no jurisdiction to hear the case. In addition, the department argued that Estrada's claim did not "qualify as a whistleblower retaliation claim under the plain meaning of [§ 4-61dd]" and, therefore, the action was "barred by sovereign immunity" and "beyond the jurisdiction of [the office of public hearings] . . . ."

In her decision, the referee determined that the office of public hearings had subject matter jurisdiction over Estrada's whistleblower retaliation complaint. The referee stated that, "[w]hen a defendant challenges a complaint on the ground that a plaintiff has elected an exclusive remedy, the issue is properly raised by a special defense and not a motion to dismiss since [i]t is both rational and fair to place the burden of pleading and proving an election of remedies on the party asserting the claim . . . ." (Internal quotation marks omitted.) She concluded that the department's "argument that this tribunal does not have jurisdiction and violates sovereign immunity is without merit . . . ."

The court disagreed with the referee's conclusion and determined that the office of public hearings lacked subject matter jurisdiction to hear Estrada's whistleblower retaliation case. The court discussed the three grievances filed by Estrada and determined that her whistleblower retaliation complaint challenged the same personnel actions that were raised in her grievances. The court analyzed the relevant statute, § 4-61dd, and concluded that, because "the statute clearly provides a mutually exclusive choice in this regard, [Estrada] is precluded from relitigating the propriety of the same personnel actions before the [referee]. The statute offered [Estrada] a clear choice of either filing

grievances or bringing the instant [whistleblower retaliation] case to address the personnel actions, but not both."

On appeal, the department argues that "[t]he fact that Estrada filed grievances regarding the same adverse personnel actions at issue in this case deprived [the office of public hearings] of subject matter jurisdiction because Estrada's claim does not fall within the statute's limited waiver of sovereign immunity." We are not persuaded by this contention and conclude that the office of public hearings had subject matter jurisdiction to adjudicate Estrada's whistleblower retaliation claim pursuant to § 4-61dd.

We begin our analysis by setting forth the legal principles relevant to our review of this claim. "The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . [T]he practical and logical basis of the doctrine [of sovereign immunity] is today recognized to rest . . . on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds, and property." (Internal quotation marks omitted.) *Jezouit* v. *Malloy*, 193 Conn. App. 576, 584, 219 A.3d 933 (2019).

"Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009).

"[I]t is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 770, 143 A.3d 578 (2016).

Furthermore, "[s]ubject matter jurisdiction does not rest on the viability of the claims that a court is asked to adjudicate. Subject matter jurisdiction involves the authority of a court to adjudicate the *type* of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or compe-

tence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Emphasis in original; internal quotation marks omitted.) *Olympus Healthcare Group, Inc.* v. *Muller*, 88 Conn. App. 296, 300, 870 A.2d 1091 (2005).

"[T]he sovereign immunity enjoyed by the state is not absolute. There are [three] exceptions: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority. . . . For a claim made pursuant to the first exception, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity. . . . In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Citations omitted; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 349–50.

The department does not dispute that § 4-61dd contains a statutory waiver of sovereign immunity. Rather, the department argues that, because Estrada filed grievances challenging the same adverse personnel actions that form the basis of her whistleblower complaint, her whistleblower retaliation action falls outside of the waiver of sovereign immunity in § 4-61dd and, therefore, the office of public hearings lacks subject matter jurisdiction to hear Estrada's whistleblower claim. By way of this argument, the department attempts to transform an election of remedies claim into an issue of subject matter jurisdiction by implicating sovereign immunity.

"As a general rule, facts must be pleaded as a special defense when they are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." *Mitchell* v. *Guardian Systems, Inc.*, 72 Conn. App. 158, 166, 804 A.2d 1004, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002). Our courts previously have stated that an election of remedies claim is properly raised by a special defense rather than as a challenge to the jurisdiction of the court.

In *Grant* v. *Bassman*, 221 Conn. 465, 470, 473, 604 A.2d 814 (1992), our Supreme Court held that the defendants' claim that the plaintiffs had made an exclusive

election of workers' compensation pursuant to General Statutes § 31-284 (a)[9] was not raised properly by a motion to dismiss challenging the court's subject matter jurisdiction and should have been raised by a special defense. In that case, a minor employee was injured at work and applied for and began receiving workers' compensation benefits for his injuries. Id., 468. Thereafter, the plaintiffs, the injured employee and his mother, filed a personal injury action against the defendant employer and its president, seeking damages for injuries sustained by the employee. Id., 466. The defendant employer moved to dismiss the plaintiffs' complaint, arguing that the trial court lacked subject matter jurisdiction because the employee had applied for and received workers' compensation benefits for those injuries. Id. The court explained that "[t]he purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . The claim that a plaintiff has elected an exclusive remedy relies on facts outside those alleged in the complaint that operate to negate what may once have been a valid cause of action. . . . It is therefore both rational and fair to place the burden of pleading and proving an election of remedies on the party asserting the claim, usually the defendant." (Citations omitted.) Id., 472–73. The court concluded that a special defense, and not a motion to dismiss, was the proper procedural mechanism for the defendant employer's challenge to the plaintiffs' complaint. Id., 473.

In making its determination, our Supreme Court in *Grant* v. *Bassman*, supra, 221 Conn. 471–72, adopted the reasoning of the court in *Fusaro* v. *Chase Brass & Copper Co.*, 21 Conn. Supp. 240, 242–44, 154 A.2d 138 (1956), in which the court discussed the appropriate procedural mechanism for raising a claim that a plaintiff has made an exclusive election of workers' compensation. The court in *Fusaro* stated that the exclusivity provision "is not at all a denial of jurisdiction in the Superior Court, as such, but is basically a destruction of an otherwise existent common-law right of action. . . . The confusion, if there be any, arises from the fact that the compensation procedure which is substituted for the common-law right of action involves a special tribunal, rather than the Superior Court. However, this is a mere incident of the destruction of the common-law right of action. In other words, there is not a lack of jurisdiction in the court but a want of a cause of action in the plaintiff." Id., 243.

In *Commissioner of Mental Health & Addiction Services* v. *Saeedi*, 143 Conn. App. 839, 71 A.3d 619 (2013), the defendant filed a whistleblower retaliation complaint with the office of public hearings in which he alleged that he had been subjected to retaliation for making a whistleblower disclosure pursuant to § 4-61dd. Id., 845. The plaintiffs filed an answer in which

they pleaded one special defense asserting that the office of public hearings lacked subject matter jurisdiction because the defendant had failed to satisfy the prerequisites for protection under § 4-61dd. Id. The plaintiffs also filed a motion to dismiss in which they alleged, inter alia, that the office of public hearings did not have subject matter jurisdiction because the defendant had filed grievances through his union and, therefore, had elected to pursue his remedies though his collective bargaining agreement. Id., 846. After the referee found in favor of the defendant, the plaintiffs appealed to the Superior Court and again argued, inter alia, that the office of public hearings lacked subject matter jurisdiction. Id., 855. The Superior Court upheld the decision of the referee. Id. On appeal to this court, the plaintiffs presented "the argument that [the defendant's] use of the grievance process served to invalidate [the defendant's] claims because he chose to pursue them through the forum provided by the collective bargaining agreement. The plaintiffs no longer claim[ed] that this deprive[d] the referee of jurisdiction to decide the matter. They claim[ed] that [the defendant's] claims should have been dismissed because § 4-61dd requires the employee to elect an exclusive forum in which to pursue these claims, and [the defendant] elected his exclusive forum when his union filed its grievances." (Footnote omitted; internal quotation marks omitted.) Id., 855–56. This court declined to review the plaintiffs' claim because it was raised for the first time on appeal. Id., 857. The court stated, however, that "[t]he plaintiffs' abandonment of their jurisdictional argument is unsurprising considering our Supreme Court's holding in *Grant* v. *Bassman* [supra, 221 Conn. 472]." *Commissioner of Mental Health & Addiction Services* v. *Saeedi*, supra, 143 Conn. App. 856 n.16.

In the present case, the statute at issue, § 4-61dd, provides two procedures to challenge an alleged retaliatory personnel action. First, an employee may "file a complaint . . . with the Chief Human Rights Referee . . . . The decision of a human rights referee under this subsection may be appealed by any person who was a party at such hearing, in accordance with the provisions of section 4-183." General Statutes § 4-61dd (e) (2) (A). Second, "[a]s an alternative to the provisions of subdivision (2) of this subsection: (A) A state or quasi-public agency employee who alleges that a personnel action has been threatened or taken may file an appeal . . . with the Employees' Review Board under section 5-202, or, in the case of a state or quasi-public agency employee covered by a collective bargaining contract, in accordance with the procedure provided by such contract . . . ." General Statutes § 4-61dd (e) (3).

There is no dispute that § 4-61dd contains a waiver of sovereign immunity and confers on the office of public hearings the authority to adjudicate the type of controversy presented in this case: a whistleblower

retaliation claim. The fact that the statute also provides for an "alternative" avenue for a complainant to seek redress for adverse personnel actions taken in retaliation for a whistleblower disclosure; General Statutes § 4-61dd (e) (3); does not deprive the office of public hearings of subject matter jurisdiction to the claim. Although the language used in § 4-61dd differs from that used in § 31-284 and discussed in *Grant* v. *Bassman*, supra, 221 Conn. 471–73, in both circumstances, the issue that arises is one regarding the election of remedies. When a complainant elects to pursue one of the avenues provided for in § 4-61dd and then subsequently proceeds to pursue the second avenue, the issue concerns the complainant's election of remedies, not subject matter jurisdiction. Estrada's complaint to the office of public hearings, even if it is pursued after the initial grievance process, does not create a lack of subject matter jurisdiction. Instead, it may result in " 'a want of a cause of action' "; (emphasis omitted) id., 472; which the department may challenge in a special defense. See id., 471. Accordingly, we conclude that the office of public hearings had subject matter jurisdiction to adjudicate Estrada's whistleblower retaliation claim.

## II

We next address the commission's contention that the court erred when it concluded that Estrada did not make a protected whistleblower disclosure pursuant to § 4-61dd. The commission asserts, specifically, that Estrada's disclosure "fits within three of the enumerated categories [in § 4-61dd]: a violation of law, mismanagement, and a danger to public safety." We conclude that Estrada did not disclose a violation of law and, therefore, did not make a protected whistleblower disclosure pursuant to § 4-61dd.[10]

The following additional facts and procedural history are relevant to our resolution of this claim. In her decision, the referee stated that § 4-61dd " 'is a remedial statute and is to be interpreted broadly to effectuate [its] purpose.' . . . By using such broadly defined words as 'abuse' and 'mismanagement,' the legislature intended to protect employees who disclose a wide array of transgressions under . . . § 4-61dd." (Citation omitted.) In concluding that Estrada had made a protected disclosure under § 4-61dd, the referee stated that Estrada "reported a violation of . . . § 19a-200, which required a city health director possesses the required degrees. General Statutes § 19a-2a[11] confers broad powers to the [department] to administer all laws under the jurisdiction of the [department], which includes oversight of compliance with . . . § 19a-200. The OLHA is charged with reviewing resumes to determine if the schools attended by the applicant were properly accredited; the OLHA is part of the [department]. This is clearly reporting a violation of law under the jurisdiction of the agency; and falls squarely within a qualifying disclo-

sure." (Footnote added; footnotes omitted.)

On appeal, the court disagreed with the conclusions of the referee. It concluded, inter alia, that Estrada's disclosure to Blaschinski was not a whistleblower disclosure under § 4-61dd. The court stated that "the disclosure does not reveal corruption, unethical practices, violations of state law or regulations, mismanagement, gross waste of funds, abuse of authority or danger to public safety occurring in any state department or agency or quasi-public agency as required by [the statute]." (Internal quotation marks omitted.) The court further stated that the letter from the department approving the city of Hartford's appointment of Wang as acting director was merely a mistake, as a result of Wang's misrepresentation and Estrada's failure to verify Wang's qualifications. The court determined that there was "no evidence that the commissioner, Blaschinski, [Estrada], or any other personnel at [the department] knew that the letter was mistaken at the time it was sent. . . . [S]ending the letter did not violate any law, nor did it represent corruption or unethical practices on the part of [the department] or the commissioner. . . . Further, the commissioner and [the department] promptly addressed the mistake when they discovered it."

The court then analyzed the relevant statutes to determine if a violation of law had occurred. "It is true that . . . § 19a-200 specifies the required qualifications of a city director of health. It is also true that . . . § 19a-2a confers broad authority upon the commissioner to administer public health laws, which includes oversight of compliance with § 19a-200. The disclosure, however, as here, that an acting city health director was unknowingly, mistakenly appointed and approved does not create a violation of law, corruption, or unethical practice at the [department] or by the commissioner [of the department]. . . .

"Two important points clearly arise from [§ 19a-200]. First, and most importantly, the commissioner [of the department] had the absolute power to approve persons for *acting* directors of health who he deems suitable. It is undisputed that Wang was an acting director of health. As such, the commissioner's letter approving Wang as an *acting* director of health broke no law. The commissioner [of the department] had the ability to deem Wang suitable and approve him. The specific [educational] qualifications for a permanent director of health do not apply to an acting director of health. Second, the obligation to appoint directors of health that meet the applicable qualifications lies with the appointing authority (i.e., the city), not the commissioner [of the department]. As such, even if the commissioner mistakenly approved a person without the necessary qualifications, he broke no law, but merely made a mistake." (Emphasis in original; footnotes omitted;

internal quotation marks omitted.)

We first set forth our standard of review and the legal principles relevant to our resolution of this claim. We review the trial court's judgment pursuant to the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. "[I]t is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) *Valliere* v. *Commissioner of Social Services*, 328 Conn. 294, 308, 178 A.3d 346 (2018).

"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [A]s to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citation omitted; internal quotation marks omitted.) *Blinkoff* v. *Commission on Human Rights & Opportunities*, 129 Conn. App. 714, 720–21, 20 A.3d 1272, cert. denied, 302 Conn. 922, 28 A.3d 341 (2011).

"Cases that present pure questions of law, however, invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . Even if time-tested, we will defer to an agency's interpretation of a statute only if it is reasonable; that reasonableness is determined by [application of] our established rules of statutory construction." (Internal quotation marks omitted.) *Valliere* v. *Commissioner of Social Services*, supra, 328 Conn.

308. In the present case, the parties do not claim that the referee's interpretation of the statute is time-tested or has previously been subjected to judicial scrutiny.

The question before this court is whether Estrada's disclosure that the commissioner of the department improperly designated Wang as acting director of health for the city of Hartford constituted a protected disclosure under § 4-61dd. Section § 4-61dd (a) provides in relevant part: "Any person having knowledge of any matter involving . . . corruption, unethical practices, *violation of state laws* or regulations, mismanagement, gross waste of funds, abuse of authority or danger to the public safety occurring in any state department or agency, [or] any quasi-public agency . . . may transmit all facts and information in such person's possession concerning such matter to the Auditors of Public Accounts. . . ." (Emphasis added.)

The statute further provides in relevant part: "No state officer or employee . . . shall take or threaten to take any personnel action against any state or quasi-public agency employee . . . in retaliation for (A) such employee's . . . disclosure of information to (i) an employee of the Auditors of Public Accounts . . . [or] (ii) an employee of the state agency or quasi-public agency where such officer or employee is employed . . . ." General Statutes § 4-61dd (e) (1). The commission contends that Estrada's reporting to Blaschinski that Wang did not hold a master's degree constituted a disclosure of a violation of § 19a-200 and, therefore, is a protected whistleblower disclosure under § 4-61dd. Specifically, the commission argues that § 19a-200 requires all directors, whether permanent or acting, either to be a licensed physician with a degree in public health or to hold a graduate degree in public health and that, regardless of the qualifications set forth in the statute, Wang was not " 'suitable' " for the position of acting director of health. Therefore, we must determine whether Estrada's disclosure constitutes a disclosure of a "violation of state laws" as used in § 4-61dd. We conclude that it does not.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding

its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 283, 77 A.3d 121 (2013). We iterate that, because the referee's interpretation of the statute "has not been 'subjected to judicial scrutiny or consistently applied by the agency over a long period of time,' our review is de novo." Id.; see also *Valliere* v. *Commissioner of Social Services*, supra, 328 Conn. 309 ("no special deference is required because there is no claim that the department's construction of the applicable statutes is time-tested, or has previously been subject to judicial scrutiny").

The parties dispute whether § 19a-200 requires that an *acting* director of health possess the qualifications set forth in § 19a-200 (a) and, consequently, whether Estrada's report that Wang did not possess a master's degree in public health disclosed a violation of state law and, thus, was a protected disclosure under § 4-61dd. We conclude that the statutory qualifications set forth in § 19a-200 do not apply to a person designated to serve as an acting director of health. Estrada, therefore, did not disclose a violation of § 19a-200 and, consequently, did not make a protected disclosure under § 4-61dd.

Section 19a-200 (a) provides in relevant part: "[A]ny person nominated to be a director of health shall (1) be a licensed physician and hold a degree in public health . . . or (2) hold a graduate degree in public health . . . ." General Statutes (Rev. to 2015) § 19a-200 (a). It further provides that, in the absence or inability to act of a director of health or if a vacancy exists, the appointing local authority, with approval of the commissioner of the department, may "designate in writing a *suitable* person to serve as *acting* director of health . . . ." (Emphasis added.) General Statutes (Rev. to 2015) § 19a-200 (a). The statute makes a distinction between qualifications required for a director of health, who must either be a licensed physician and hold a degree in public health or hold a graduate degree in public health, and those for an *acting* director of health, stating that an *acting* director of health need only be *suitable*. See General Statutes (Rev. to 2015) § 19a-200 (a).

In construing the statute, the commission's argument that the qualifications set forth in § 19a-200 (a) for a director of public health also apply to an *acting* director of public health is belied by the plain language of the statute. When subsection (a) is read as a whole, it is apparent that the legislature did not intend for the qualifications set forth in § 19a-200 (a) to apply to an *acting* director of health. It is significant that the legislature

stated that a director of health must possess certain educational qualifications but used the phrase "suitable person" when discussing the designation of an acting director of health. See *Stone* v. *East Coast Swappers, LLC*, 337 Conn. 589, 602, 255 A.3d 851 (2020) ("[t]he use of the different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings" (internal quotation marks omitted)). The legislature's inclusion of qualifications for those nominated as a director of health, while stating that an individual designated for *acting* director should be "suitable," indicates its decision that the qualifications required for a director of health not apply to an *acting* director of health. Because our objective is to ascertain and give effect to the apparent intent of the legislature, "we cannot accomplish a result that is contrary to the intent of the legislature as expressed in the [statute's] plain language. . . . The intent of the legislature, as [the] court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say." (Footnote omitted; internal quotation marks omitted.) *Vincent* v. *New Haven*, 285 Conn. 778, 792, 941 A.2d 932 (2008).

We conclude that no violation of § 19a-200 occurred, and, therefore, it follows that Estrada did not disclose a violation of law. We conclude that her report to Blaschinski is not a protected disclosure under § 4-61dd.[12] Thus, we agree with the court that Estrada is not entitled to protection under § 4-61dd on these facts and circumstances.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Hereinafter, unless otherwise indicated, all references to § 19a-200 in this opinion are to the 2015 revision of the statute.

[2] General Statutes (Rev. to 2015) § 19a-200 (a) sets forth the process for nominating a director of a municipal health department and provides in relevant part: "The mayor of each city, the warden of each borough, and the chief executive officer of each town shall . . . nominate some person to be director of health for such city, town or borough . . . ."

[3] At the time of the hearing in front of the referee, Blaschinski held the position of chief operating officer of the department. She supervised Estrada beginning in 2011.

[4] The letter, signed by the commissioner of the department, stated in relevant part: "We have reviewed . . . Wang's credentials and find them appropriate for the position. Therefore, pursuant to Section 19a-200 of the Connecticut General Statutes, you may appoint . . . Wang as the Acting/ Interim Director of Health for the City of Hartford . . . ."

[5] There are no facts in the record to indicate that Wang received a master's degree in public health from any other institution.

[6] In order for Estrada to establish a prima facie case of whistleblower retaliation, three elements must be shown: (1) Estrada must have engaged in a protected activity as defined by the statute; (2) Estrada must have incurred or been threatened with an adverse personnel action; and (3) there must be a causal connection between the actual or threatened personnel action and the protected activity. See General Statutes § 4-61dd; *Kisala* v. *Malecky*, Superior Court, judicial district of New Britain, Docket No. CV-13-5015760-S (October 7, 2013) (56 Conn. L. Rptr. 902, 905); see generally *Commissioner of Mental Health & Addiction Services* v. *Saeedi*, 143 Conn. App. 839, 841–42 n.1, 71 A.3d 619 (2013); *Eagen* v. *Commission on Human*

*Rights & Opportunities*, 135 Conn. App. 563, 565–66 n.1, 42 A.3d 478 (2012).

[7] Because we agree with the court that Estrada did not prove that she was engaged in any protected whistleblower activity, we need not address the commission's remaining claims of whistleblower retaliation.

[8] The remaining four special defenses are not relevant to this claim.

[9] General Statutes § 31-284 (a) provides: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury had been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

[10] The commission claims that Estrada's disclosure to Blaschinski fits within two other enumerated categories under § 4-61dd: mismanagement and a danger to public safety. The commission raises these arguments, however, for the first time on appeal. "We adhere to the well settled principle that [t]his court will not review issues of law that are raised for the first time on appeal. . . . We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Rosa* v. *Lawrence & Memorial Hospital*, 145 Conn. App. 275, 309, 74 A.3d 534 (2013). "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 756, 196 A.3d 328 (2018). These arguments were neither raised by the defendants at the administrative hearing or in the trial court nor decided by the referee or the court. Therefore, we decline to review the commission's claims that Estrada's report to Blaschinski was a disclosure of mismanagement or a danger to public safety pursuant to § 4-61dd.

[11] General Statutes § 19a-2a provides in relevant part: "The Commissioner of [the department] shall employ the most efficient and practical means for the prevention and suppression of disease and shall administer all laws under the jurisdiction of the [department] and the Public Health Code. . . ."

[12] Moreover, this is not the type of disclosure intended to be protected under § 4-61dd. The court concluded that the letter signed by the commissioner of the department approving Wang as acting director of health was prepared and executed without knowledge that the information in Wang's resume was incorrect and that Wang did not actually possess a master's degree in public health. Therefore, the approval was merely a mistake. Furthermore, the court stated that Estrada "bore substantial responsibility for the mistake" because she drafted the letter with an understanding of the purpose of the letter and knowing that the letter would be signed by the commissioner of the department. The court determined that, "[a]lthough the letter was mistaken, sending the letter did not violate any law, nor did it represent corruption or unethical practices on the part of [the department] or the commissioner [of the department]. . . . Further, the commissioner [of the department] and [the department] promptly addressed the mistake when they discovered it." We agree with the court's analysis. Therefore, even assuming, arguendo, that § 19a-200 (a) requires that an acting director of health possess the qualifications that apply to permanent directors of health, Estrada did not disclose a violation of law but merely disclosed the fact that the department was mistaken in believing that Wang held a master's degree in public health, a mistake that was "induced by the false resume of Wang . . . ." We conclude that a mistake such as this one is not the type of disclosure the legislature intended to protect under the statute.